THE STATE OF OHIO, APPELLANT, *v.*
SAURMAN ET AL., APPELLEES.

(No. 80-201—Decided December 17, 1980.)

*Mr. William J. Brown,* attorney general, and *Mr. Paul D. Hancock,* for appellant.

*Mr. Jan A. Saurman,* for appellees.

HOLMES, J. R. C. 1533.161 is a valid exercise of the police power if the desired result of the statute is within the state's police power, and there must be a rational relationship between the chosen means and that result. See *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, certiorari denied, 357 U. S. 904.

R. C. 1533.161 was enacted for the protection of game. There is no question that the protection of game is within the state's police power. *Baldwin* v. *Fish & Game Comm. of Montana* (1978), 436 U. S. 371, 391; *State* v. *Hanlon* (1907), 77 Ohio St. 19. Thus, the only question before the court is whether R. C. 1533.161 is rationally related to the protection of game.

However, before engaging in such an analysis, it is helpful to restate certain rules that courts must apply when testing the constitutionalilty of a statute. An Act of the General Assembly is entitled a strong presumption of constitutionality. *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278; *State, ex*

*rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 161; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142. While this presumption is rebuttable, it may be rebutted only by proving the existence of the constitutional infirmity beyond a reasonable doubt. *Id.*

In *State* v. *Renalist, supra,* at page 278, this court stated:

"* * *[W]hen an enactment under attack is a legislative exercise pursuant to the police power, a party opposing such action must demonstrate a clear and palpable abuse of that power in order for a reviewing court to substitute its own judgment for legislative discretion."

The challenged portion of R. C. 1533.161[1] reads:

"No person shall* * *throw or cast the rays of a spotlight or other artificial light from any vehicle into any field, woodland, or forest for the purpose of locating a wild animal."

The appellees argue that the behavior proscribed by R. C. 1533.161 is not rationally related to the protection of wild game because a violation can occur even though the violator is not hunting.[2] The Municipal Court agreed with the analysis.

---

[1] R. C. 1533.161 reads, in its entirety:

"No person shall throw or cast the rays of a spotlight or other artificial light from any vehicle into any field, woodland, or forest while having in his possession a hunting device, or throw or cast the rays of a spotlight or other artificial light from any vehicle into any field, woodland, or forest for the purpose of locating a wild animal.

"This section does not apply to law enforcement officers, game protectors, military personnel, and officers or employees of the department of natural resources while in the performance of their duties, or to any landowner or lessee having a reason to use a light while engaged in surveillance or protection of his property.

"An officer whose duty it is to enforce orders of the division of wildlife or Chapters 1531. and 1533. of the Revised Code may arrest a person whom he has reasonable grounds to believe is violating this section, search the vehicle for firearms or other hunting implements in the possession or under the control of such person, and seize the same."

The violation of R. C. 1533.161 is a third-degree misdemeanor. R. C. 1533.99(B).

[2] In holding R. C. 1533.161 unconstitutional, the Municipal Court stated that the statute is overbroad. However, the overbreadth doctrine deals with statutes that impinge on some right protected by the First Amendment. *Broadrick* v. *Oklahoma* (1973), 413 U. S. 601; *State* v. *Daniels* (1980), 61 Ohio St. 2d 220. R. C. 1533.161 does not impinge on any right protected by the First Amendment.

Additionally, appellee's reliance on *Papachristou* v. *Jacksonville* (1972), 405 U. S. 156, is misplaced. *Papachristou* held the city of Jacksonville's vagrancy ordinance unconstitutional because it was impermissively vague. The court stated that a statute is void for vagueness when either it fails to give a person of ordinary intelligence fair

The court found the statute to be a hunting offense and held it unconstitutional because it outlaws otherwise innocent behavior,[3] not related to the prevention of hunting.

That analysis is faulty. The state's power to protect game is broader than merely that of the prevention of hunting. Therefore, the central question is not whether a rational relationship between R. C. 1533.161 and the prevention of hunting exists; rather, it is whether R. C. 1533.161 is rationally related to the protection of game.

The materials before the trial court relative to the legislative history of the subject statute show that it was first enacted in 1969 as Am. Sub. S. B. No. 71 (133 Ohio Laws 164). This statute prohibited "jacklighting," the shining of a light from a vehicle into fields or woods adjacent to a public road, between sunset and sunrise, for the purpose of spotting wild animals and while in possession of a hunting implement.

The statute was amended in 1972 by Am. H. B. No. 959 (134 Ohio Laws 2296), which statute prohibited the shining of an artificial light from a vehicle on a public highway into any field or woods between 10 p.m. and sunrise from the first day of September through the following last day of February, or doing so at any time between sunset and sunrise when in possession of a hunting implement, for the purpose of locating wild animals. This amendment made the prohibition of "jacklighting" applicable to even those persons not in possession of firearms.

---

notice that his contemplated conduct is forbidden by the statute, or it encourages arbitrary and erratic arrests and convictions. *Id.* at 162. See, also, *Grayned* v. *Rockford* (1972), 408 U. S. 104, 108-09.

R. C. 1533.161 gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. Also, the proscribed conduct is sufficiently narrow so that there is no fear of arbitrary and erratic arrests or convictions.

[3] The characterization of the behavior, made unlawful by R. C. 1533.161, as innocent adds little to the present analysis. The Supreme Court of Vermont, in interpreting a statute similar to R. C. 1533.161, addressed the same argument and stated:

"As to the defendants' argument that the Legislature has, by enacting 10 V.S.A. §4702, made otherwise innocent conduct a crime, this has been the case each time that the Legislature newly imposes criminal sanctions on individual activity. This has been the case in areas of consumer protection and environmental concerns, which made conduct previously innocent violative of penal laws." *State* v. *Racine* (1974), 133 Vt. 111, 115, 329 A. 2d 651, 654.

The statute was again amended in 1976 by Am. Sub. H. B. No. 1316 (136 Ohio Laws 3743), by which amendment no one, with certain exceptions, may at any time on, or off, public highways, shine an artificial light into a field or woods from a vehicle when in possession of a hunting device, or do so for the purpose of locating a wild animal.

From a review of the progression of this legislation, it becomes apparent that the General Assembly concluded that increasingly stringent measures were needed to curtail the shining of artificial lights into the woodlands at night in order to spot wild game. It is also apparent that there were problems of enforcement of R. C. 1533.161 prior to the complete banning of the shining of lights into the woodlands from an automobile for the purpose of spotting wild animals. Further, the enforcement of the statute must have provided many difficult problems for the game protector in determining whether those persons in moving vehicles, shining lights into the woods, had hunting implements in their possession. Finally, it is also quite conceivable that persons were taking advantage of the opportunity to lawfully spotlight wild animals from their vehicles, and were unlawfully killing these animals.

This law does prohibit the legitimate viewing of wild game from automobiles by way of artificial light by many citizens who would not take undue advantage of such a privilege. However, it is also a fact that laws must be enacted to prevent the excesses of a few, even though such laws have the effect of denying certain otherwise lawful activity of the majority. There is a reasonable basis for the General Assembly to determine that the elimination of all spotlighting of wild game from vehicles would be in the best interests and furtherance of the protection of the wild animals of this state.

Certainly it is within the province of the General Assembly to enact laws for the protection of wild game in addition to those laws which deal with the killing of such game. To limit the General Assembly to those laws prohibiting the killing of an animal by certain hunting implements or techniques would unduly restrict proper state game management. As noted by the attorney general, such limitation "would leave a law enforcement person's hands tied until the harm (death or maiming of a wild animal) had already occurred."

Finally, it should be noted that R. C. 1533.161 does not prohibit the spotlighting of wild animals other than from a vehicle. The General Assembly undoubtedly has determined that the conduct which was contrary to the best interests of appropriate game protection emanated from vehicles, and has decided that the privilege to observe wildlife at night through the use of artificial light could reasonably be continued by sportsmen and animal watchers who were on foot.

We hereby hold that R. C. 1533.161 is rationally related to the protection of game, and that there is a rational relationship between this statute and the public health, safety and welfare. Further, in the absence of proof beyond a reasonable doubt that no rational relationship exists between this statute and the public health, safety and welfare, the statute must be upheld. *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394, 396.

Therefore, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and DOWD, JJ., concur.