ED JACKAMONIS, Speaker State Assembly
You have asked my opinion on the constitutionality of sec. 29.245, Stats., which prohibits the "shining" of animals under certain circumstances. "Shining" is defined in the statute as "the casting of rays of a light on a field, forest or other area for the purpose of illuminating, locating or attempting to illuminate or locate wild animals." Sec. 29.245 (1)(d), Stats.
Materials accompanying your request elaborate on your inquiry. A constituent of yours has urged that the Wisconsin animal shining law violates constitutional guarantees of due process of law by lacking any rational relationship between the public welfare and the method used by the statute to achieve that end, as was held in State of North Carolina v. Stewart, 40 N.C. App. 693,253 S.E.2d 638 (Ct.App. 1979). This constituent also urges that certain presumption language in the statute removes an accused person's constitutionally guaranteed presumption of innocence.
Before analyzing sec. 29.245, Stats., I note that the enactment of laws reasonably related to the protection of a state s wildlife population is a valid exercise of a state's police power. Baldwin v. Fish and *Page 50 Game Commission of Montana, 436 U.S. 371 (1978); Hughes v.Oklahoma, 441 U.S. 322 (1979). So long as constitutional requirements are met, "`protection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection.'" Baldwin, 436 U.S. at 391, quoting Lacoste v.Department of Conservation, 263 U.S. 545, 552 (1924).
Further, all statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute must prove the law unconstitutional beyond a reasonable doubt. Sambsv. City of Brookfield, 97 Wis.2d 356, 370, 293 N.W.2d 504
(1980). "Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. . . . The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification."Omernik v. State, 64 Wis.2d 6, 18-19, 218 N.W.2d 734 (1974). In the present case, we are concerned with the Legislature's classification of persons using lights under particular circumstances.
Wisconsin's animal shining law, sec. 29.245, Stats., was enacted in ch. 190, Laws of 1979, and replaced Department of Natural Resources ("DNR") regulations prohibiting the shining of wild animals while hunting or in possession of weapons (sectionsNR 10.07 (3), NR 10.10 (1)(a), and NR 10.102 Wis. Adm. Code (1978)). Relevant portions of the new law provide:[1]
(1) DEFINITION. As used in this section:
 (a) "Flashlight" means a battery operated light designed to be carried and held by hand.
 (b) "Light" includes flashlights, automobile lights and other lights.
 (c) "Peace officer" has the meaning designated under s. 939.22 (22).
 (d) "Shining" means the casting of rays of a light on a field, forest or other area for the purpose of illuminating, locating or attempting to illuminate or locate wild animals. *Page 51 
 (2) PRESUMPTION. A person casting the rays of light on a field, forest or other area which is frequented by wild animals is presumed to be shining wild animals. A person may introduce evidence to rebut this presumption.
 (3) SHINING DEER OR BEAR WHILE HUNTING OR POSSESSING WEAPONS PROHIBITED. (a) Prohibition. No person may use or possess with intent to use a light for shining deer or bear while the person is hunting deer or bear or in possession of a firearm, bow and arrow or crossbow.
 (b) Exception. This subsection does not apply to a peace officer on official business, an employe of the department on official business or a person authorized by the department to conduct a game census.
 (4) SHINING WILD ANIMALS WHILE HUNTING OR POSSESSING WEAPONS PROHIBITED. (a) Prohibition. No person may use or possess with intent to use a light for shining wild animals while the person is hunting or in possession of a firearm, bow and arrow or crossbow.
(b) Exceptions. This subsection does not apply:
 1. To a peace officer on official business, an employe of the department on official business or a person authorized by the department to conduct a game census.
 2. To a person who possesses a flashlight or who uses a flashlight at the point of kill while hunting on foot raccoons, foxes or other unprotected animals during the open season for the animals hunted.
 (5) SHINING WILD ANIMALS AFTER 10 P.M. DURING CERTAIN TIMES OF THE YEAR PROHIBITED. (a) Prohibition. No person may use or possess with intent to use a light for shining wild animals between 10 p.m. and 7 a.m. from September 15 to December 31.
(b) Exceptions. This subsection does not apply:
 1. To a peace officer on official business, an employe of the department on official business or a person authorized by the department to conduct a game census.
 2. To a person who possesses a flashlight or who uses a flashlight at the point of kill while hunting on foot raccoons, *Page 52 
foxes or other unprotected animals during the open season for the animals hunted.
 3. To a person who possesses a flashlight or who uses a flashlight while on foot and training a dog to track or hunt raccoons, foxes or other unprotected animals.
 4. If rules promulgated by the department specifically permit a person to use or possess a light for shining wild animals during these times.
Subsection (6) of the law permits counties to enact more restrictive regulations of animal shining. Subsection (7) provides criminal penalties — a fine of not less than $1,000 nor more than $2,000, or not more than ninety days in jail, or both. plus revocation of all DNR licenses — for shining deer or bear while hunting or possessing weapons. Violations of subsecs. (4) or (5) may be penalized by a civil forfeiture of not more than $1,000.
I
 Does the presumption stated in sec. 29.245 (2) render the statute unenforceable'?
In requesting this opinion, you furnished copies of letters from a constituent of yours, who asserts that the presumption stated in subsec. (2) of sec. 29.245, Stats., removes a criminal defendant's constitutionally guaranteed presumption of innocence until proven guilty.
The mere statement of a presumption in a statute does not violate anyone's constitutional rights. The problem, if any, would arise in the application of the presumption during a criminal trial. particularly as reflected in the court's instructions to the jury. You will recall that only subsec. (3), prohibiting the shining of deer or bear while a person is armed or is hunting, carries true criminal penalties of fines or imprisonment. However. the Wisconsin Supreme Court has labelled forfeiture provisions "penal." State ex rel. Lynch v. Conta,71 Wis.2d 662, 670, 239 N.W.2d 313 (1976). Also, while forfeiture actions are essentially civil in nature, due process requires that the state carry at least a burden of persuasion by the "clear, satisfactory, and convincing" standard. Sec. 23.76, Stats.; City of Neenah v. Alsteen, 30 Wis.2d 596, 142 N.W.2d 232
(1966). Thus, the Legislature is not free to allocate the burden of persuasion to the *Page 53 
defendant as it could in a purely civil action. Lavine v. Milne,424 U.S. 577, 585 (1976). I therefore assume that the DNR will observe the following precautions in actions under all subsections of sec. 29.245, Stats., and not just under the statute's one criminal subsection.
As described in sec. 903.01, Stats., a presumption, when used at trial, "imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." In the present case, the state would prove the basic fact that the defendant was "casting the rays of light on a field, forest or other area which is frequented by wild animals." Without any further proof by the state, the trier of fact would then be permitted or required to conclude that the defendant was "shining wild animals," as defined in sec. 29.245 (1)(d), Stats., unless evidence offered by the defendant was found sufficient to rebut the presumption of shining.
My last statement raises a variety of questions which are articulated at length in two 1979 United States Supreme Court cases — Sandstrom v. Montana, 442 U.S. 510 and Ulster County Courtv. Allen, 442 U.S. 140 — and more than forty Wisconsin cases now pending in the federal courts, typified by Pigee v.Israel, 503 F. Supp. 1170, (E.D. Wis. 1980). The crux of these cases is the premise that the trier of fact can never relieve the state of its ultimate burden to prove every element of a crime beyond a reasonable doubt. (Our civil corollary would be that the state must always prove every element of a civil forfeiture offense by clear, satisfactory and convincing evidence.) Rather than engage in an extensive discussion of conclusive and rebuttable presumptions, which you can read in the cases cited above, I will try to offer some more practical guidelines by which the DNR can utilize the sec. 29.245 (2) presumption and minimize constitutional challenges.
The presumption stated in sec. 29.245 (2). Stats., could be applied in a constitutional or unconstitutional manner.[2] The application *Page 54 
would be unconstitutional if the defendant had to introduce so much evidence in order to rebut the presumption that the state was relieved of its ultimate burden of proof on any element of the offense. The application would be constitutional if the trier of fact were merely permitted to infer shining from proof of the basic fact. Ulster, 442 U.S. at 157. The application would also be constitutional, in my opinion, if the presumption of shining could be rebutted by any evidence, even the defendant's bare denial, without introduction of any other facts. Ulster,442 U.S. at 158 n. 16; Muller v. Israel, 510 F. Supp. 730 (E.D. Wis. 1981).
The presumption of constitutionality of statutes does not permit me to search for and rely on circumstances under which sec. 29.245 (2), Stats., might be used illegally. I consider itmost unlikely that any prosecutor would charge, or that any jury would convict, if the state's sole evidence were the basic fact of casting rays of light into an area frequented by wild animals. Since any evidence from the defendant should be considered sufficient to rebut the presumption, until we are advised otherwise in post-Sandstrom judicial decisions, I expect that every animal shining prosecution will involve proof of additional suspicious circumstances. such as a pattern of behavior, or presence of companions on foot with guns.
The presumption itself, as stated by the Legislature, is not unconstitutional.
II
 Are the restrictions on shining while hunting or possessing weapons a valid exercise of the police power?
Your constituent contends that sec. 29.245, Stats., is unconstitutional for the same reasons given in State of NorthCarolina v. Stewart, 40 N.C. App. 693, 253 S.E.2d 638 (Ct.App. 1979). The North Carolina court there rejected an assertion that the state's deer shining statute was unconstitutionally vague, but agreed that the statute was "so overbroad as to constitute arbitrary and unreasonable interference with innocent conduct and to deny due process." 253 S.E.2d at 641. I agree with the North Carolina court's general analysis, but *Page 55 
would not apply its holding to subsecs. (3) and (4) of sec. 29.245, Stats., because of significant differences in statutory content.
The North Carolina statute provided, in relevant part, that:
 Any person who, . . . [during the night] deliberately flashes or displays an artificial light from or attached to a motor-driven conveyance . . . so as to cast the beam thereof beyond the surface of a roadway or in any field, woodland or forest in an area frequented or inhabited by wild game animals shall be guilty of a misdemeanor. Every person occupying such vehicle or conveyance at the time of such violation shall be deemed prima facie guilty of such violation as a principal.
253 S.E.2d at 639.
The word, "deliberately," in the above statute encompasses a wide range of behavior, including the actions of a person who "deliberately" turns on his or her car headlights, so as not to drive without light on a highway in a game-inhabited area. The person need not possess any weapon or intend to hunt wild game, and the person need not be seeking animals in particular. The prudent driver intends to illuminate any obstacle on or about to be on the roadway. In fact, North Carolina and Wisconsin traffic laws require the use of headlights during hours of darkness. Sec.347.06, Stats.; 253 S.E.2d at 640. In its efforts to protect wild animals from being hunted unfairly, the North Carolina Legislature put in jeopardy the innocent motorist who sought only to travel legally and safely through a rural area at night. The court found the law "lacking any rational, real, or substantial relation to the public health, morals, order, safety or general welfare." 253 S.E.2d at 641.
Wisconsin's definition of "shining" is more specific: the rays of light must be cast onto a field, forest, or other area "frequented by wild animals." More important, the light must be projected "for the purpose of illuminating, locating or attempting to illuminate or locate wild animals."[3] The prohibited conduct is narrowed even further in subsecs. (3) and (4) by the requirement that the person be "hunting" or be in possession of a firearm, bow and arrow, or cross-bow. *Page 56 
While the person can violate the statute merely by possessing a light while hunting or carrying the specified weapons, the state must prove that the light was possessed "with intent to use [it] for shining" deer, bear, or other wild animals. It would thus be impossible for a non-hunter who was found to possess both a gun and a light to be held in violation of subsecs. (3) or (4) without additional evidence of intent. That evidence might be testimony that the car was zig-zagging slowly on a remote rural road. or that the warden had earlier observed rays of light being projected from the car window into adjoining fields or forests.
The Wisconsin Legislature could reasonably assume that Wisconsin wildlife, particularly deer and bear, would be at an unfair disadvantage against hunters using lights to locate and immobilize the animals. The Legislature could also reasonably assume that enforcement of such other controls as shorter seasons and bag limits would not be sufficient to protect the wildlife resource, because of the efficacy of shining in locating and killing wild animals. I therefore conclude that subsecs. (3) and (4) of sec. 29.245, Stats., are a valid exercise of the police power insofar as they prohibit the use, or possession with intent to use, of lights for shining wild animals, by persons hunting or in possession of weapons capable of killing such animals.
III
 Is subsec. (5) of sec. 29.245. Stats., a valid exercise of the police power?
I have several major concerns about the constitutionality of subsec. (5). Since the paragraph applies to people utterly without the means to kill or injure game, the rational relationship between the paragraph and the state's police power to protect wild animals is not immediately apparent. Also, the statute appears to apply to almost any motorist driving after 10 p.m. in the fall, whose headlights shine into a field or forest as the car negotiates a curve in the road. It is conceivable that a public highway could be included in the "field, forest, orother area frequented by wild game" in the definition of shining. The prudent citizen, including a law-abiding hunter in route to a favorite hunting spot, might indeed wonder whether he or she must completely forego rural autumn travel after 10 p.m., or risk a civil forfeiture of up to $1,000, or even criminal penalties if there is a *Page 57 
gun in the car. The law-abiding person might be legitimately concerned as to the quantum of evidence required to establish intent to locate or illuminate wild animals, and how much evidence will suffice to rebut the presumption of shining stated in subsec. (2) of the statute.
For reasons I will discuss below, I am unable to conclude that the statute is unconstitutional beyond a reasonable doubt and that there is no rational relationship whatsoever between subsec. (5) and a valid police power objective. However, indiscreet application of the subsection by DNR personnel or the courts may give certain defendants standing to attack the subsection as unconstitutionally vague under the standards of Papachristou v.City of Jacksonville, 405 U.S. 156 (1972) and Grayned v. City ofRockford, 408 U.S. 104, 108-09 (1972). In both cases the Supreme Court reiterated that a statute is void for vagueness when it either fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or it encourages arbitrary and erratic arrests and convictions. Such an attack, by a defendant with standing, would probably be successful. I would, therefore, recommend that the DNR seek amendment to clarify the statute, or else enact rules, authorized by sec. 29.245 (5)(b)4., Stats., clarifying activities which are not prohibited by sec. 29.245, Stats.
If a statute is reasonably subject to a limiting interpretation, I must adopt that interpretation, rather than find the statute unconstitutional on its face. Despite the broad language of the shining definition, I cannot believe that the Legislature intended to penalize the motorist in transit, whose car headlights happen to pass over a field or forest. I therefore apply the statutory construction rule of ejusdem generis to the definition of "shining" is sec. 29.245 (1)(d), Stats., and to the presumption in sec. 29.245 (2), Stats. This means that the words "or other area" are interpreted to mean an area of the same kind
as the two preceding nouns, field or forest. The "other area" might thus be a marsh, but not a highways which happens to be frequented by wild animals.
That does not solve the problem of the motorist driving on a curve. I believe this problem can be solved by construing the words "illuminating, locating or attempting to illuminate or locate" in subsec. (1)(d) narrowly, to exclude the motorist in transit who is trying to illuminate and locate any obstacle on or about to be on the highway. *Page 58 
Thus, the person proceeding directly and at a reasonable rate of speed down a highway or road could not be charged with a shining violation; the person zig-zagging slowly, or parked and waiting for animals to come into the headlight beams, would provide the needed additional evidence that the car lights were being used for shining.
What is the rational relationship between the prohibition on shining, without weapons, and protection of the state's wildlife? The Ohio Supreme Court, upholding a shining statute just slightly narrower than sec. 29.245, Stats., in State v. Saurman,64 Ohio St.2d 137, 413 N.E.2d 1197 (1980), found that the prohibition ofall shining from vehicles resulted in simplified and more effective enforcement by conservation wardens, who no longer had to search suspicious vehicles for weapons, matching weapon and light to one of several occupants. Improved enforcement then led directly to improved protection of wild animals.413 N.E.2d at 1200.
The same rationale applies to shining from vehicles in Wisconsin. Employes of the DNR Division of Enforcement advise my office that the number of deer taken illegally in the state is substantial, perhaps even approaching the number taken legally. A significant number of the illegal killings involve the use of a light. The DNR expends considerable resources, I am advised, to prevent killing of deer with the aid of lights. With a limited number of wardens per county, enforcement is difficult. Before enactment of sec. 29.245, Stats., an individual warden might have had to deal with as many as 100 vehicles shining animals on any single evening. His or her job was further complicated by high speed "getaways," in which some shiners would dispose of their weapons before obeying the warden's instruction to stop. Checking every suspicious vehicle for weapons became impossible during periods of widespread shining violations. DNR also advises that shiners would at times use two vehicles, one with a light and one with a weapon.
In evaluating the facial constitutionality of the law, I must assume that the Legislature weighed similar reasons when it passed sec. 29.245, Stats. Elimination of the need to prove possession of a weapon has resulted in improved enforcement of the ban on animal shining, particularly deer shining, which then results in greater protection of the state's wildlife resource. *Page 59 
The right of citizens to be free from arbitrary arrest and prosecution cannot be compromised just for the convenience of law enforcement officers. However, after excluding motorists in transit from coverage of the statute, and after carefully evaluating the structure of subsec. (5) in relation to pedestrians using lights, I believe the statute does not
unreasonably curtail legal activities.
The hours of prohibition in subsec. (5) protect against infringement on the legitimate activities of farmers. campers and nature lovers enjoying the evening air. Shining lights into forests and fields is only prohibited after 10 p.m. and before 7 a.m. Seasoned hunters advise me that shining after 10 p.m., in the fall months, even by unarmed pedestrians, is almost always part of the hunting process. Hunters-to-be may go out before a hunting expedition to find out where the deer are this year, and why they were not in a familiar location during a previous season. Thus, the presumed fact — animal shining — may well follow "more likely than not" from the proved fact, as required by Barnes v. United States, 412 U.S. 837, 843 (1973), andLeary v. United States, 395 U.S. 6, 44-45 (1969).
It is true that sec. 29.245 (5), Stats., prohibits the legitimate late night viewing of wild animals by persons who simply like to look at deer, bear and raccoons and would never use the lights to aid in killing the animals. As observed by the Ohio court in Saurman, "it is also a fact that laws must be enacted to prevent the excesses of a few, even though such laws have the effect of denying certain otherwise lawful activity of the majority." 413 N.E.2d at 1200-01. By proscribing only late night shining, after September 15 (when most campers have retired their gear for the winter), the Legislature has minimized its curtailment of innocent activity.
In conclusion, I am compelled to find subsec. (5) facially valid, along with the rest of the statute, by the presumption of constitutionality of statutes. I am concerned about the breadth of language used in the statute, but will assume that sensible enforcement will avoid a successful vagueness challenge to the constitutionality of the statute.
BCL:MVB
[1] All citations in this opinion will be to sec. 29.245. Stats., unless otherwise specified.
[2] The rules of standing preclude a defendant from attacking a natural resources statute on the ground that it could be applied to someone — but not that defendant — in an unconstitutional manner. Thus, the ultimate viability of the subsec. (2) presumption will be determined by the discretion with which prosecutors use it in presenting cases.
[3] Although that purpose may be presumed on proof of the basic facts stated in subsec. (2), I believe that presumption may be rebutted by such simple testimony as "my purpose was not to locate wild animals." *Page 60