THE STATE OF OHIO *v.* KEISTER.
THE STATE OF OHIO *v.* BROWN.
CITY OF SIDNEY *v.* SWIGER.

(Nos. 83TR-C-1580, -1486AB and -1302—
Decided July 27, 1983.)

Sidney Municipal Court.

*Mr. Keith Schnelle,* for plaintiff.

*Mr. Donald G. Luce* and *Mr. William Zimmerman,* for defendants Jimmy L. Keister, Roger O. Brown and Jerome A. Swiger.

SWINGER, J. Each of the three defendants attacks the constitutionality of the recently enacted Ohio legislation prohibiting operation of motor vehicles with alcohol in the body exceeding specified limits as measured by blood, urine or breath. Each was tested by the intoxilyzer and each result exceeded the limit set forth in R.C. 4511.19(A)(3) and the identically worded city ordinance.

While the court can find no legal authority in support of their contentions, this opinion is rendered since there are not, as yet, any reported cases construing the so-called *per se* provision of the Ohio statute.

Defendants claim the legislation is vague and overbroad on its face, and accordingly violates due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and by Article I, Section 16, of the Ohio Constitution.

Its constitutionality must be tested in light of the fact that the legislature has seen fit to create new offenses prohibiting the operation of a motor vehicle with specified blood/alcohol, breath/alcohol or urine/alcohol levels. Whether R.C. 4511.19(A)(2), (A)(3) and (A)(4) are held to be offenses separate and distinct from subdivision (A)(1) (under the influence) or alternative elements of subdivision (A)(1), does not affect the determination of their constitutionality.

Article I of the Ohio Constitution and the limits imposed by the United States Constitution are the only restrictions on the legislature's power to create, define

1

and punish offenses. *State* v. *Healy* (1951), 156 Ohio St. 229 [46 O.O. 110]. The guarantees contained in Sections 1, 16 and 19 of Article I of the Ohio Constitution are substantially equivalent to the due process guarantees of the United States Constitution as applied to the states by the Fourteenth Amendment. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3]. The Ohio Supreme Court has accordingly held that United States Supreme Court decisions may be utilized to interpret the Ohio guarantees. *Peebles* v. *Clement* (1980), 63 Ohio St. 2d 314 [17 O.O.3d 203].

Due process requires that a criminal statute be sufficiently explicit to inform the public what conduct is prohibited. *Connally* v. *General Construction Co.* (1926), 269 U.S. 385. An impermissibly vague law offends either or both of two tenets. It fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute or that it promotes arbitrary enforcement by police, judges and juries due to a lack of explicit standards of application. *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156. A statute which fails in either respect is void. *Columbus* v. *New* (1982), 1 Ohio St. 3d 221.

It is obvious that a person of normal intelligence who is contemplating mixing drinking with driving can understand the statutory prohibition of driving with alcohol in his body exceeding the specified level. Various materials are readily available to the public which explain in common language how one may estimate the amount of alcohol that may be consumed without exceeding the statutory limit. And one obviously can choose to not drink at all if he intends to drive.

To illustrate that the *per se* provisions are neither vague nor arbitrary, a comparison of it to the prior and present prohibition of driving "under the influence" is beneficial.

The standard jury instructions of this court define "under the influence of alcohol" as:

"The condition in which a person finds himself after having consumed some intoxicating beverage, whether mild or potent, in such quantity, whether small or great, that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable, noticeable or perceptible degree, thereby lessening his ability to operate a motor vehicle.

"It is not a question of how much liquor would have such-and-such effect upon an ordinary person, the question is what effect did liquor consumed by the accused have on him at the time under consideration.

"It is common knowledge that different people react differently to intoxicating beverages; and the same parties may react differently at different times. The State is not required to prove that the defendant was so intoxicated or drunk that he could not properly function or safely drive a car. All that the statute requires is that the defendant be under the influence of intoxicating liquor while operating a motor vehicle. The expression 'under the influence' covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors."

A good deal of the instruction is devoted to explaining what "under the influence" does not mean. Quantity and potency of the beverage are not determinative. How an ordinary person would be affected is an improper standard. And finally, even the ability to operate a car safely does not negate being under the influence.

Judges have a difficult time formulating a standard to determine guilt, even after much experience in the area. When the trier of fact is a jury, the determination of guilt on the instruction referred to may be even more nebulous.

The *per se* standard neither encourages nor allows arbitrary enforcement. To the contrary, it contains a very precise standard for the determination of guilt.

Statutory language similar to that contained in R.C. 4511.19(A)(2), (A)(3) and (A)(4) has consistently been upheld in other jurisdictions when subjected to those attacks now made by defendants. *Greaves* v. *State* (Utah 1974), 528 P. 2d 805; *Roberts* v. *State* (Fla. 1976), 329 So. 2d 296; *State* v. *Franco* (1982), 96 Wash. 2d 816, 639 P. 2d 1320; *State* v. *Basinger* (1976), 30 N.C. App. 45, 226 S.E. 2d 216. The statute does not fail for vagueness.

An overbroad law is one that purports to prohibit not only acts which the legislature may forbid, but also acts which the First Amendment (freedom of speech) makes immune to such regulation. Such overbroad laws are unconstitutional if they fail to provide breathing room for First Amendment rights. *NAACP* v. *Button* (1963), 371 U.S. 415; *State* v. *Saurman* (1980), 64 Ohio St. 2d 137 [18 O.O.3d 367]. The defendants fail to explain how their First Amendment rights could be infringed, and the court cannot conceive how they can be.

The defendants complain that the legislation creates a conclusive presumption of guilt if a breath-alcohol test exceeding the stated limit is introduced, thus depriving them of their presumption of innocence. However, the statute contains no presumptions, but only elements which the state must prove. The state need only prove operation of a vehicle by a defendant with the prohibited ratio of alcohol to bodily substance. Negating the presumption of innocence with proof beyond a reasonable doubt of each element of the offense charged is consistent with procedural due process requirements as set forth by the United States Supreme Court in *In re Winship* (1970), 397 U.S. 358 [51 O.O.2d 323].

The defendants apparently have misinterpreted *Mullaney* v. *Wilbur* (1975), 421 U.S. 684, and *Patterson* v. *New York* (1977), 432 U.S. 197.

In *Mullaney,* the state of Maine improperly imposed on the defendant a burden to disprove premeditation without requiring the state to prove it initially. In *Patterson,* the burden of proof of an affirmative defense was properly placed on the defendant.

Neither of these cases supports defendants' contention that they are saddled with any presumption in the cases at hand.

Furthermore, the court does not find the new legislation to be violative of defendants' state or federal substantive due process rights. Ohio and federal courts both utilize a rational basis test in this area, absent some fundamental right requiring strict scrutiny. The court in *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 110 [4 O.O.2d 113], set forth the applicable rule:

"* * * [A]n exercise of the police power * * * [is] valid if it bears a real and substantial relation to public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary."

The fact that a violation of the challenged statute results in incarceration does not change the standard of review. See *State* v. *Saurman, supra* (third degree misdemeanor); *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394 [16 O.O.3d 430] (fourth degree misdemeanor); *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276 [10 O.O.3d 408] (first degree misdemeanor).

These cases further make it clear that the statute is entitled to a strong presumption of constitutionality. The defendants bear the burden of rebutting this presumption by at least a clear and convincing showing of the clear and palpable abuse of the police power. They have failed to demonstrate that it is unreasonable or unrelated to the public health, safety, morals or general welfare.

Of more than forty thousand traffic deaths nationally per year, over one half

involve drinking and driving. In addition to the death toll, there are enormous numbers of maimings and less serious injuries. The economic loss from this carnage is incalculable.

To suggest that the people, through their legislature, are powerless to attempt to curb this awesome problem is unrealistic.

The Ohio Legislature no doubt determined that persons who operate vehicles while exceeding the specified breath-alcohol limit create a risk of harm to persons and property of sufficient magnitude to justify the prohibition and punishment of such conduct. Any social utility derived from mixing driving and drinking is clearly overshadowed by the dangers created thereby when the prohibited limit is reached.

The court finds that the law was enacted to promote highway safety and that such a purpose is proper and well within the police power.

In upholding the implied consent law of Massachusetts against a procedural due process attack, the United States Supreme Court recognized that the states have a compelling interest in preserving the safety of their public highways and removing drunken drivers from their roads. *Mackey* v. *Montrym* (1979), 443 U.S. 1.

Twenty-two states have enacted legislation similar to R.C. 4511.19. Such statutes have withstood substantive due process attacks based upon a finding of legitimate purpose and reasonable means. For example, the court in *Coxe* v. *State* (Del. 1971), 281 A. 2d 606, found that a statute similar to R.C. 4511.19 was reasonable based upon a number of studies and statistics which supported the conclusion that the stated amount of alcohol "has sufficient adverse effect upon any person to make his driving a definite hazard to himself and others."

While the new legislation may have shortcomings, the court finds it to be a reasonable approach by the legislature to provide for the public safety.

For the foregoing reasons, the motion of each defendant to dismiss on constitutional grounds is overruled.

*Motions to dismiss overruled.*