City of DAYTON, Appellee,

v.

GIGANDET, Appellant.

[Cite as *Dayton v. Gigandet* (1992), 83 Ohio App.3d 886.]

Court of Appeals of Ohio,
Montgomery County.

No. 13018.

Decided Nov. 25, 1992.

*J. Anthony Sawyer,* Director of Law, and *John J. Scaccia,* Assistant City Attorney, for appellee.

*A. Mark Segreti, Jr.,* for appellant.

*Per Curiam.*

The appellant, Mary M. Gigandet, did not deny the trespass by entering and remaining, after notice, inside the premises of the Dayton Women's Center at 1809 North Main Street in Dayton, Ohio, as a part of a group anti-abortion protest. Appellant admitted that she was repeatedly requested to leave by those in charge and by the police.

A complaint for criminal trespass was filed pursuant to Section 133.05(A)(3) of the General Ordinances of the City of Dayton in that she unlawfully, without privilege to do so, and recklessly remained on the premises after notice against unauthorized access or presence was given to her by actual communication.

A motion to dismiss based upon a claim that the ordinance was vague on its face and unconstitutional was overruled. Appellant was found guilty by a jury and sentenced, and filed a notice of appeal. The assignments of error will be considered separately.

1

■ "Trespass" is a broad general word meaning any violation of law resulting in injury or damage to another. Its meaning is restricted in criminal law by other facts to which its application is directed. For example, every unauthorized entry onto another's property is a trespass. One who goes upon the premises of another without invitation, express or implied, and for *his or her own purpose*, is a trespasser. The unlawful act of a trespasser is the basic element in many crimes, as in burglary with intent to commit a theft.

■ In this case, the trespass is recognized for what it is—an unlawful act— and to make the purpose of the ordinance clear it requires notice to the offender by actual communication, by posting, by fencing or other enclosure, or in a manner prescribed by law. Under the ordinance, anyone who recklessly enters or remains on the premises of another in the face of the required notice is guilty of the crime of trespassing. Notice to a criminal is unusual and removes any doubt as to the clarity of the city ordinance.

There is nothing vague or indefinite in the language of the ordinance. It is undisputed that appellant entered and after repeated notices and demands remained on the premises *for her own purpose*. It is not necessary to rely on the presumption of constitutionality. *Dayton v. S.S. Kresge Co.* (1926), 114 Ohio St. 624, 151 N.E. 775; *State v. Saurman* (1980), 64 Ohio St.2d 137, 18 O.O.3d 367, 413 N.E.2d 1197.

There is testimony that after appellant and her associates were requested to leave the office, get out of the office and off the property, appellant used the phone and went through files containing medical records of patients. If theft of information was her intent, more serious circumstances may have been involved.

The first assignment of error based upon a claim of unconstitutionality is without merit.

2 and 3

These two assignments of error may be considered together. The second asserts a failure of the appellee to establish a lack of privilege. In the third assignment of error, appellant seeks to establish the only privilege claimed, that is, a right to protect life of the unborn and to force her beliefs upon others even, if necessary, to violate a civil law.

■ The privilege of necessity is an affirmative defense of lawful justification and is required to be established by the person asserting it. *State v. Harkness* (1991), 75 Ohio App.3d 7, 598 N.E.2d 836; R.C. 2901.05. Appellant offered no lawful justification for the trespass.

■ This court in a series of cases determined that the affirmative defense of necessity does not justify or excuse an act of criminal trespass by one who enters and occupies an abortion clinic for the purpose of protesting abortion. *Kettering v. Berry* (1990), 57 Ohio App.3d 66, 567 N.E.2d 316. Disagreement with the law as announced by the Supreme Court of the United States is irrelevant at trial and evidence in support of such disagreement is not admissible as evidence.

The personal motivation asserted in this case is not a legitimate defense. The court may simply refer to earlier opinions. It is not necessary to repeat rationale previously expressed. Judicial economy requires that the definitive authority of precedent be identified without further comment. *Kettering v. Berry; Dayton v. Meyer* (Mar. 29, 1991), Montgomery App. No. 11848, unreported, 1991 WL 47533; *Dayton v. Fitzgerald* (Nov. 21, 1991), Montgomery App. No. 12084, unreported, 1991 WL 244680; *Toledo v. Carpenter* (Dec. 14, 1990), Lucas App. No. L–90–022, unreported, 1990 WL 205014; *Dayton v. Drake* (1990), 69 Ohio App.3d 180, 590 N.E.2d 319; *Cleveland v. Egeland* (1986), 26 Ohio App.3d 83, 26 OBR 258, 497 N.E.2d 1383 (a nuclear protest); *State v. Prince* (1991), 71 Ohio App.3d 694, 595 N.E.2d 376; *Cox v. New Hampshire* (1941), 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049.

The second and third assignments of error are overruled.

4

The fourth assignment claims error and abuse of discretion by the court during the examination of prospective jurors.

Our conclusion is that the examination by the court was conducted in an orderly and fair manner under trying circumstances. The first prospective juror to be excused announced:

"I'm against abortion. If this is what this is all about."

A preliminary order (*in limine*) prohibited reference to abortion as the taking of human life or any reference to a necessity for the defendant to enter and remain on the premises to save life. Ground rules were discussed and the court recognized the requirement that objections on the preliminary order be perfected. Counsel for the defense argued that on the issue of recklessness defendant's motive to save human life should be admissible. He indicated he did not wish to offend the court, but "to some extent we'll have to go around the border."

There is no subject on which citizens are more divided. Fetal destruction of human existence touches every member of society. It creates motivation, whether firm or fleeting, that influences behavior.

■ The test for a prospective juror is not whether he has escaped normal influences or has no views on a universal question; the test is whether his views

will impair his judgment to the extent that he would not be able to faithfully and impartially determine the facts and apply the law according to the instructions of the court. *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841; *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984.

The issue in this case did not include the beliefs, motivation, or convictions of anyone. Recklessness required acts, conduct, or behavior, after notice, in wanton disregard for the property rights of another. Abortion and all its concomitant circumstances were not an issue in determining whether the defendant acted recklessly.

■ The public circumstances surrounding the abortion demonstration made the selection of the jury difficult. Questions to determine whether prospective jurors would be able to set aside personal beliefs and impartially determine the legitimate issues submitted by the court were not improper. However, efforts to infuse jurors with the defendant's beliefs and to test their ability to share or participate in the defendant's ideas went beyond the issues to be resolved. Efforts to obtain such empathy with prospective jurors may have a degree of popularity, but are serious obstacles in selecting a jury.

In two previous abortion protest cases, this court recognized that the scope and extent of the examination of prospective jurors is largely within the discretion of the trial judge. *Kettering v. Berry; Dayton v. Meyer.*

■ The appellant voices two complaints: First, that examination of certain jurors was precluded. The court did excuse a series of prospective jurors who expressed an inability or a difficulty in being impartial. There was no objection from counsel who finally suggested further inquiry of a prospect. There was no specific request to examine and no suggestion for a conference with the court. Second, it is argued that the court precluded the defense from inquiring about bias. A sidebar conference was later requested. The court accepted the defense request to call prospects in regular sequence even though they expressed opinions to the court earlier that because of their opinions they could not be impartial. Counsel mentioned that he thought he would get a chance to interrogate such prospects and noted an objection. While the court may permit a further examination of such individuals, if requested promptly, there was no abuse of discretion in excusing those who did not indicate they could be fair and impartial to both sides.

The transcript appears complete but the sequence of those called and the movement of the prospects—whether seated on the panel or excused and seated with remaining prospects—is not clear.

■ As to persons who were employed by Dayton in occupations not related to this case, this factor alone did not disqualify them as jurors.

Interrogation of jurors was frequently confusing. The inquiry whether abortion is right or wrong was double edged. It is a matter of law subject to an instruction by the court. Since a personal opinion was implied, the response could be based upon natural, moral or religious beliefs rather than the law.

Our conclusion is that the record does not establish an abuse of discretion or of prejudice by the trial court in the conduct of the examination of prospective jurors. *Dayton v. Meyer; Wainwright v. Witt; State v. Rogers.*

The fourth assignment of error is denied.

## 5

During trial, two color photographs of aborted fetuses were discovered in the ladies' restroom. A spectator admitted placing them there. She was admonished and barred from the courtroom. Thereafter the court inquired of the jury, and one member said she observed what they were, picked them up, and threw them in the trash. This juror said that the material (court's exhibit) could not possibly influence her decision in reaching a verdict. No others indicated they had seen the photographs. No objection was made to the procedure of the court or to the juror.

This fifth assignment of error claims the court abused its discretion in handling this unexpected development. We do not agree and in the absence of objection this assignment of error was waived.

Appellant further argued that after the incident the court failed to allow the *defendant* to disclaim any connection with it. The record shows that counsel protested in the presence of the jury that *"We* had no knowledge at all." Neither the defendant nor her counsel was accused of this contempt of the administration of justice. Any further statement would have aggravated the situation which passed without objection.

The next witness called by the defense was a member of the clergy, who testified that from his acquaintance and association in religious affairs defendant was a sincere person and that she did not act recklessly. There was no foundation or response as to her general reputation in the community. Both parties promptly indicated no further questions and when asked to step down the witness inquired: "I'm not permitted to say anything?" "No sir," responded the court. The witness answered: "Doesn't give her much of an opportunity."

The court warned the witness against further comment and advised him of the possibility of contempt of court. He was excluded from the courtroom under an agreed separation of witnesses.

Appellant argues under this assignment of error that the court's comment to this witness left the jury with the impression that defendant was acting improperly.

Association in religious affairs did not add to the competence of the witness to express his opinions as to general character, and after being quickly excused by both parties his expressed desire to say something to the jury for the benefit of the defendant was improper. This incident adds nothing to the fifth assignment of error. If anything, it concerns the strategy of the defense and does not portray error by the court.

There is no merit to the fifth assignment of error.

6

The sixth and final assignment of error requests reversal because of an improper basis for imposing the maximum sentence.

The appellant was previously similarly convicted of the same offense in Dayton and Kettering, Ohio. The trial court acknowledged that appellant had deep-seated personal and moral beliefs and was free to express her views, but had no right to interfere with the lawful rights of others. The trial court said: "When you do this deliberately time and time again * * * it's not by mistake, its by design." The presumption that the trial court followed the guidelines for sentencing was not overcome.

Appellant followed her conscience, but, in repeatedly committing civil disobedience by criminal trespass and disrupting a business on the premises, invited the penalty provided by law. While an initial offender may deserve a minimal sentence, a determined recidivist abandons the prospect of mitigation and earns the consequences.

The sixth assignment of error is denied.

The judgment will be affirmed.

*Judgment affirmed.*

WOLFF, GRADY and McBRIDE, JJ., concur.

ROBERT L. McBRIDE, J., retired, of the Second Appellate District, sitting by assignment.