OPINION
This appeal emanates from the Lake County Court of Common Pleas. Appellant, West Channel Yacht Club, appeals the June 10, 1998 judgment entry awarding judgment in favor of appellees, James and Betty Turner, on appellant's complaint, and further, granting appellees punitive damages on their counterclaim. Additionally, appellant appeals the entry dated September 29, 1998, ordering appellant to pay appellees $8,000 in attorney fees.[1]
On May 31, 1995, appellant filed a complaint to quiet title and other relief against appellees alleging that it had been the equitable owner of a portion of property located at 35817 Lake Shore Boulevard in Eastlake, Ohio since 1972. Appellant agreed that appellees owned the property abutting that land since November 20, 1992. Appellant argued that for more than twenty-one years appellant used the area of the land that both parties claim to own in accordance with the elements of adverse possession.
On June 21, 1995, appellee James Turner filed a counterclaim declaring ownership of the property and maintaining a cause of action for trespass. Appellees submitted discovery to appellant on December 9, 1996. After over nine months, and two motions to compel, on September 26, 1997, appellant filed its responses to the discovery.
On October 10, 1997, appellant filed an amended complaint to include another party, Chagrin Lagoons Yacht Club, Inc. ("Chagrin Lagoons"), alleging that it may also have an interest in the property in question. Appellant submitted discovery requests to Chagrin Lagoons. On October 21, 1997, appellees proceeded to file an answer to the amended complaint, a counterclaim, and a third-party complaint against William and Malise Wiles ("Wiles"), the former owners of the property. Appellant replied to the counterclaim and the Wiles moved to dismiss the third-party complaint, which was denied. Meanwhile, appellant filed a motion for default judgment against Chagrin Lagoons, which was granted. The Wiles filed their answer to appellees' third-party complaint. On April 9, 1998, the Wiles moved for separate trials and the trial court granted the motion. Ultimately, the trial court dismissed appellees' third-party complaint against the Wiles.
The following facts were adduced from the bench trial that started on May 1, 1998. Appellant, an Ohio corporation, was incorporated on March 10, 1972. On August 1, 1972, appellant entered into a land contract to procure property that abutted sublot 256 owned by appellees and located on West Island Drive in Eastlake. Both parties agreed that the most northerly point of the land was situated within the metes and bounds description of appellees' property. Yet, appellant claimed that the northern portion of the land, which is part of sublot 256, belonged to it through adverse possession.
Sublot 256 passed through many owners from 1972 to 1992. In 1972, Thomas Cox owned sublot 256 and transferred ownership to Thomas Golenberke ("Golenberke"). Golenberke revealed that he conveyed the property to Wiles, who deeded the property to appellees in 1992.
Appellees presented the testimony of numerous witnesses, who indicated that the northerly point of sublot 256 remained unchanged from 1972 until 1978. Additionally, appellee James Turner testified that he had been familiar with the property since 1966. He purchased sublot 256 in November 1992 and following the acquisition, he notified appellant, both orally and in writing, not to trespass on his property. He also introduced a letter he sent to appellant on May 25, 1993, informing appellant that it must pay for the use of the wall on the main channel of the river to dock boats belonging to club members. Subsequently on June 14, 1993, he sent another letter ordering appellant to immediately remove all docks and boats from his property. Thereafter, appellant's attorney forwarded correspondence to appellee James Turner stating that since appellant had openly and notoriously used the land for over twenty-one years, his rights were extinguished.
Appellee James Turner further testified that he had the property surveyed, pins and flags put down to mark the property lines, and "no trespassing" signs placed on the property when he took over possession in 1992. Further, appellees demonstrated the expenses they incurred to present their case-in-chief. They retained a certified real estate appraiser, a surveyor, a title company to perform a title search, and an attorney to defend them against appellant's complaint.
In a judgment entry dated June 10, 1998, the trial court dismissed appellant's action and ordered appellant to pay appellees $10,000 in punitive damages. Before determining the exact amount of compensatory damages, the trial court in its June 10, 1998 judgment entry, clearly indicated that such damages existed and continued the matter to determine the amount of the damages.[2] From that judgment entry appellant timely filed a notice of appeal. On July 9, 1998, appellees filed a motion for attorney fees and a reimbursement of expert fees. In a judgment entry dated September 29, 1998, the trial court granted appellees' motion for attorney fees and awarded appellees $8,000. On October 13, 1998, appellant filed a motion to amend its notice of appeal with this court to include the September 29, 1998 judgment entry, which we granted. Appellant now asserts the following as error:
 "I. The trial court erred in finding that [appellant] had not used the property continuously for more than twenty-one years.
 "II. The trial court erred in finding appellant to be a trespasser after finding appellant's use of the disputed land was `permissive.'
 "III. The trial court erred in awarding appellee[s] more than nominal damages without evidence of actual damages being offered at trial.
 "IV. The trial court erred in awarding appellee[s] punitive damages.
 "V. The trial court erred in considering and allowing [appellees'] motion for attorney fees after a final judgment had been rendered in the case."
In its first assignment of error, appellant contends that the trial court erred in finding that it had not continuously occupied the property in excess of twenty-one years. Specifically, appellant argues that it began its operation in 1972 and continuously possessed the land until 1993.
The Supreme Court of Ohio has held, "[t]o acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." Grace v. Koch
(1998), 81 Ohio St.3d 577, syllabus. Generally, this court has disfavored the doctrine of adverse possession as a method of acquiring title to land, and thus, any adverse possession claim is construed strictly in favor of the titleholder. See, generally,Cannone v. Levy (Dec. 20, 1991), Trumbull App. No. 91-T-4560, unreported.
In the case sub judice, appellant had the burden of proving by clear and convincing evidence the requisite elements of adverse possession. Appellant failed to demonstrate that it continuously possessed the land from 1972 until 1993. Although appellant was incorporated in March 1972, it did not acquire the property until August 1, 1972. Furthermore, appellant did not present any evidence proving that it continuously used sublot 256 from 1972 to 1993. After appellant acquired its property, the record does not reveal that it immediately began a course of occupation and ownership sufficient to establish adverse possession.
Moreover, appellees offered evidence that showed that appellant did not install the boat docks until about 1984. Appellees also introduced the testimony of a few witnesses who recalled that the portion of sublot 256 in question was under water until the late 1970's. These witnesses also recalled that for the first several years appellant was in operation, the property remained unchanged. Appellees demonstrated that one of the previous owners of sublot 256 entered into negotiations with appellant to discuss appellant's plan to construct a retaining wall in exchange for membership to the yacht club. After appellant denied this offer, it was never granted permission to construct the retaining wall. This was outlined in a letter from the attorney who represented the then-owner of sublot 256. Thus, appellant has failed to meet its burden of proof and did not establish by clear and convincing evidence that it met all the requirements of adverse possession. Appellant's first assignment of error lacks merit.
In its second assignment of error, appellant avers that the trial court mistakenly classified it as a trespasser even though the trial court concluded that its use of the land was permissive. This court has stated that "every unauthorized entry onto another's property is a trespass. One who goes upon the premises of another without invitation, express or implied, and for his orher own purpose, is a trespasser." (Emphasis sic.) Warren v.Owens (June 27, 1997), Trumbull App. No. 96-T-5480, unreported, at 4-5, quoting Dayton v. Gigandet (1992), 83 Ohio App.3d 886, 890.
In the case at bar, appellant alleges that the individuals who owned the land before appellees gave appellant permission to enter the land. However, two of the previous owners of sublot 256 testified at the trial. One of them stated that he objected to the installation of the retaining wall on the property, while the other stated that he did not care. The Supreme Court of Ohio has stated that "[a] use of premises permissive in the beginning can be changed to one which is hostile and adverse only by the most unequivocal conduct on the part of the user * * *." Hinman v.Barnes (1946), 146 Ohio St. 497, paragraph two of the syllabus.
Hence, although one of the previous owners may have consented to appellant's presence on the land, the record reveals that appellee James Turner sent two letters requesting that appellant either pay him some money or quit trespassing on his property. Appellee James Turner's testimony confirmed that appellant was made aware of this both verbally and in writing, and therefore, appellant committed a trespass on the land. Appellant's second assignment of error is not well-taken.
As appellant's third and fourth assignments of error are interrelated, they will be addressed in a consolidated manner. Appellant claims that the trial court awarded appellees more than nominal damages without any evidence of actual damages, and further, that the trial court erred in awarding appellees punitive damages.
Damages are available in every case of trespass. Pearl v. PicWalsh Freight Co. (1969), 112 Ohio App. 11, 12. "It is well-settled Ohio law that once a party proves that he has been trespassed against that party has a right to nominal damages without specifically proving actual damages." Fairfield CommonsCondominium Assn. v. Stasa (1985), 30 Ohio App.3d 11, 20. The measure of damages must be gauged against the rental value or the reasonable rental value of the use of the property during the time the owner was deprived of his or her property. Pearl, supra,
unreported, at 15. Thus, even if an individual actually benefited by the act of the trespasser, the individual is still entitled to at least nominal damages. Id. at 14.
In the instant matter, since we concluded in the second assignment of error that appellant committed a trespass against appellees, damages are available. The fact that appellant may have used the property from 1984 to 1992 with the permission of previous owners has nothing to do with appellees. Appellant claims that it also cleaned up the property and installed a retaining wall. However, after appellees purchased sublot 256, they placed "no trespassing" signs on their property and informed appellant, both verbally and in writing, that they did not want appellant on their property. According to appellee James Turner, appellant spoiled the property by removing trees, disregarding appellees' signs, and denying them the use and enjoyment of their property. Therefore, appellant's argument that it enhanced the value of appellees' land is not well-founded. Additionally, it appears that appellant was not prejudiced by appellees' evidence of physical damage since the trial court's award of compensatory damages was confined to the rental value of the boat dockage. Hence, we conclude that the amount of compensatory damages the trial court awarded for the trespass was proper.
Furthermore, although punitive damages do not serve a compensatory purpose, they are intended to serve as a punishment for the offender and a warning to others. Foust v. ValleybrookRealty Co. (1981), 4 Ohio App.3d 164, 168. Punitive damages are recoverable where the trier of fact finds that the tortious actions of a defendant, giving rise to the cause of action, were taken with actual malice, through conduct that may be characterized as reckless, wanton, willful, or gross. Villella v.Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 37. In addition, punitive damages may be awarded in cases involving fraud, malice or insult. Griffin v. Lamberjack (1994), 96 Ohio App.3d 257, 263. The amount of punitive damages to be granted lies largely within the discretion of the trial court. Okocha v. Fehrenbacher (1995),101 Ohio App.3d 309, 324. Such award will not be reversed "unless it is based upon passion and prejudice." Id.
We also note that in Savage v. Thomas (Aug. 18, 1995), Lake App. No. 94-L-062, unreported, this court upheld the trial court's punitive damage award over the tortfeasor's challenge that he did not trespass knowingly. The plaintiff in Savage alleged that the defendant trespassed on her land while constructing a home on adjoining land and that the trespass had destroyed certain vegetation and changed the grading of the plaintiff's land. In addressing the defendant's assertion that the trial court erred when it instructed the jury on punitive damages, the Savage court wrote the following:
 "* * * [Defendant-]appellee contends that there was no evidence of conscious wrongdoing. However, evidence was adduced which demonstrated that appellee had been told to stay off the property and not to clear the property by a person who purported to own the property, but that encroachments onto the property continued.
 "Appellee is correct in his contention that malice cannot include mere reckless conduct. * * * `[A]ctual malice requires consciousness of the near certainty (or otherwise stated "great probability") that substantial harm will be caused by the tortious behavior.'
 "* * * [I]t is clear that * * * appellee consciously disregarded a great probability that his conduct would result in substantial harm to appellant's property."
 Id. at 6-7.
In the case at hand, after a careful review of the record, we conclude there was sufficient credible evidence to support the trial court's conclusion that appellant willfully and intentionally trespassed against appellees, and that by doing so, appellant disregarded the likelihood that its conduct would result in substantial harm to appellees' property. Therefore, the trial court properly awarded punitive damages. Thus, appellant's third and fourth assignments of error are without merit.
In its fifth assignment of error, appellant maintains that the trial court erred in permitting appellees' motion for attorney fees after a final judgment had been rendered. This court has held that "under the doctrine of the law of the case, a lower court is free to change its rulings on all issues not complained of upon appeal and not previously decided as finally settled." Bodo v.Nationwide Ins. Co. (1991), 75 Ohio App.3d 499, 505. Furthermore, in Okocha, 101 Ohio App.3d at 323, the Eighth District Court of Appeals relied on Bodo in holding that a trial court had the jurisdiction to award attorney fees after a notice of appeal was filed since the issue of attorney fees had not been decided at the time the notice of appeal was submitted. "An award of attorney fees is discretionary with the trial court, and we will not disturb that award unless the court has abused its discretion in making it." Sprovach v. Bob Ross Buick, Inc. (1993), 90 Ohio App.3d 117,123.
In the case at bar, appellees' counterclaim set forth a demand for attorney fees. Further, the testimony presented at the trial indicated the amount appellees incurred in attorney fees. However, in its June 10, 1998 judgment entry, the trial court failed to address the question of attorney fees. Thus, initially the issue had not been raised on appeal, nor had the trial court previously decided it. Accordingly, the trial court did not abuse its discretion. The award of attorney fees was appropriate. Appellant's fifth assignment of error lacks merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
CHRISTLEY, J., NADER, J., concur.
[1] This court discovered that one claim was not finalized by the trial court, so the matter was remanded to the trial court. In compliance with this court's order, the trial court issued a September 29, 1999 judgment entry. Pursuant to that entry, we now have a final appealable order. Therefore, appellant's notice of appeal filed July 8, 1998 will be considered a premature appeal as of September 29, 1999.
[2] In its September 29, 1999 judgment entry, the trial court awarded appellees $2,826 in rental value as compensatory damages.