OPINION
{¶ 1} This is an appeal from a finding of guilty after a no contest plea to a charge of operating a motor vehicle under the influence of alcohol.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} As stated in the transcript (p. 3) the appellant had filed a motion to be permitted to provide a defense based on an emergency.
{¶ 3} The trial court denied such motion for lack of finding statutory authority for such and that the facts stipulated to the existence of an emergency were questionable.
{¶ 4} A stay of imposition of sentence was granted to permit an appeal to this Court to determine the availability of such a defense, if established.
{¶ 5} A stipulation of agreed facts was provided to the Court.
{¶ 6} This stipulation recites:
 STIPULATIONS OF FACT 1. On Saturday, October 28, 2000, Hidden Lakes Campground held its annual Halloween Party.
 2. Defendant, his wife and his brother, Allen Jarrell, arrived at the Campground around noon on October 28, 2000, with the intention of spending the entire weekend at the Campground. Defendant had a campsite and a camper at the Campground.
 3. Defendant and others began consuming alcohol around 3:00 p.m. on October 28, 2000. Defendant had no intention of operating any motor vehicles after that time and had no reason to believe he would be operating a motor vehicle after that time.
 4. At approximately 8:00 p.m., Defendant and others went to the clubhouse at the Campground for the Halloween Party.
 5. About the same time, Allen Jarrell arrived at the Campground Clubhouse with his wife, Michelle Jarrell, and Defendant's wife.
 6. Defendant knew that Allen Jarrell and his wife, Michelle Jarrell, had been arguing and fighting with each other for several days. He was surprised to see them together at the Halloween Party.
 7. At approximately 11:30 p.m., Allen Jarrell and Michelle Jarrrell left the Clubhouse Party along with many others. Approximately five people remained at the Clubhouse, including the Defendant.
 8. Michelle Jarrell operated her car forward and Allen Jarrell was dragged and suffered a deep laceration to his knee.
 9. Defendant observed the injuries sustained by Allen Jarrell and was concerned about the profuse bleeding.
 10. Defendant is employed at Simcote, Inc., and had been trained to perform C.P.R. in the, course of his employment.
 11. Defendant attempted to locate someone to take Allen Jarrell to the hospital but could not.
 12. Randall L. Scheitler and Defendant put Allen Jarrell into Defendant's truck.
 13. Defendant believed that he was probably under the influence of alcohol and should not operate a motor vehicle.
 14. Defendant then continued and transported Allen Jarrell to the Morrow County Hospital Emergency Room.
 15. A payphone was attached to the clubhouse where the Halloween Party was held. The parties dispute whether it was working at any time relevant herein.
 16. A payphone was attached to the security guard station. The parties dispute whether it was working at any time relevant herein.
 17. A citizen's band radio was attached to the security guard station. The parties dispute whether it was working at any time relevant herein.
 18. A sign at the entrance of the Campground states: "PLEASE-DO NOT-BLOCK GATEVISITOR PULL-TO-RIGHT USE C.B. TO CALL. GUARD."
19. There are 1,006 lots at Hidden Lakes Campground.
 20. Approximately 40 people live at Hidden Lakes Campground year round.
 21. Defendant traveled south and took High Street through Mt. Gilead. He would have passed the pay phone on the corner of High and Main (the parties do not stipulate to whether the payphone was working at any time relevant herein), the Mt. Gilead Police Dept., the Duke Gas Station (Open 24 hours a day; a pay phone is located outside, but the parties do not stipulate to whether the payphone was working at any time relevant herein); Kroger (Open 24 hours a day; a pay phone is located outside, but the parties do not stipulate to whether the payphone was working at any time relevant herein); and Duds and Suds.
 22. Defendant resides in Marion, Ohio, and he is familiar with Mt. Gilead only from traveling on Rt. 95 through Mt. Gilead on his way to and from the Campground.
 23. The Defendant had to travel through part of Mt. Gilead in order to reach the Morrow County Hospital.
 24. At the Emergency Room parking lot, Defendant was approached by a Police Officer and was subsequently arrested and charged with OMVI.
 25. On October 29, 2000, at 12:18 a.m., Defendant was arrested and charged with Operating a motor vehicle while under the influence of alcohol in violation of OR.C. § 4511.19(A)(6).
 26. Officer Meftah observed the Defendant in the driver's seat of a running Ford pick up truck at the Morrow County Hospital parking lot.
 27. As Officer Meftah attempted to make contact with the Defendant, the Defendant began to back out of the parking space he had been in. Officer Meftah ordered the Defendant to drive back into the parking space.
 28. The Defendant complied with Officer Meftah's order and pulled back into the original parking spot.
 29. After the Defendant got out of his truck, Officer Meftah noticed that his eyes hung half open and were bloodshot and glassy, he had a hard time getting out of the truck, and he detected a strong odor of alcohol coming from the Defendant.
 30. The Defendant admitted to Officer Meftah that he had been drinking.
 31. Trooper Lightfoot administered the field sobriety tests to the Defendant.
 32. The Defendant was arrested and transported to the Morrow County Jail, where he was read the BMV-2255 form and agreed to submit to the BAC Datamaster test.
 33. Defendant took the BAC Datamaster test at 12:55 a.m., and registered 0.187.
 34. The medical records regarding Allen Jarrell, set forth in pertinent part:
 HISTORY OF CHIEF COMPLAINT: This is a 40-year old male patient who grabbed the steering wheel while standing outside of his wife's car and she drove away, dragging him approximately ten feet. He struck his knee on the pavement and sustained a laceration. He has a minimal abrasion to the left knee and an abrasion/laceration to the right knee that is quite deep and has some extensive bleeding. He denies other injuries.
 PHYSICAL EXAMINATION EXTREMITIES: Structural examination of the lower extremities reveals minimal abrasion across the anterior patella of the left knee. The right knee has a deep laceration with tissue missing and extensive bleeding. The length of the laceration is approximately 4 cm. There is a smaller abrasion with a skin flap noted to the lateral aspect of the large laceration.
 E.D. COURSE: The wounds were cleansed with Hydrogen peroxide and Betadine and then rinsed with sterile saline. Then using 3-0 Prolene, ten uninterrupted sutures were placed to close the wound. The skin flap was cut away to allow for new tissue growth. The area was bandaged and held in place with an Ace wrap.
 ASSIGNMENT OF ERROR
{¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIM THE RIGHT TO THE AFFIRMATIVE DEFENSE OF NECESSITY AND DENYING HIM A JURY INSTRUCTION REGARDING THE AFFIRMATIVE DEFENSE OF NECESSITY."
{¶ 8} First, as to the requested dismissal of the appeal based upon a two day lateness in filing appellant's brief, we must agree with appellant that Appellate Rule 14(C) provides an additional three days when the notice by the clerk has been mailed, as was the case sub judice.
{¶ 9} Therefore the dismissal is denied.
{¶ 10} The statutes referenced in the briefs provided are R.C. § 2901.05, 4507.02 and 4511.19.
{¶ 11} Revised Code § 4507.02(E)(1) states:
 (E)(1) It is an affirmative defense to any prosecution brought pursuant to division (B), (C), or (D) of this section that the alleged offender drove under suspension or in violation of a restriction because of a substantial emergency, provided that no other person was reasonably available to drive in response to the emergency.
{¶ 12} Revised Code § 4511.19, the violation of which is the offense charged does not contain a similar necessity affirmative defense.
{¶ 13} Revised code § 2901.05(A) and (C)(1) and (2) provide:
 2901.05 PRESUMPTION OF INNOCENCE; PROOF OF OFFENSE; OF AFFIRMATIVE DEFENSE; AS TO EACH; REASONABLE DOUBT
 (A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.
* * *
 (C) As used in this section, an "affirmative defense" is either of the following:
(1) A defense expressly designated as affirmative;
 (2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.
* * *
{¶ 14} We find that R.C. § 2901.05 is a general statute applicable to all chargeable offenses and creates in all cases a right to the affirmative defense of necessity as justification for violation of a statute, if such affirmative defense can be established. This general statute is applicable to all statutes describing specific offenses, such as R.C. § 4511.19. The presence or absence of similar language in a statute is not controlling.
{¶ 15} Several courts have established certain criteria required of such an affirmative defense with the burden of establishing such placed upon the person asserting the defense.
{¶ 16} These are:
 (1) The defendant must not be at fault in creating the situation.
(2) He had a bona fide belief in the necessity.
 (3) The harm being avoided is clear, imminent and certain to befall with no reasonable opportunity to avoid it except by the commission of the illegal act, the performance of which must be immediate.
(4) The harm avoided must outweigh the harm committed.
 (5) There must be no apparent legislative intent to preclude use of the defense in the applicable situation. See State v. Harkness (1991), 75 Ohio App.3d 7; State v. Melchoir (1978), 56 Ohio St.2d 15; City of Dayton v. Gigandet (1992), 83 Ohio App.3d 886; State v. Prince (1991), 71 Ohio App.3d 694.
{¶ 17} In the case sub judice we must therefore determine that the affirmative defense of necessity was available to appellant if the applicable facts, if believed, would raise a question in the minds of reasonable persons as to the existence of the necessity.
{¶ 18} According to the stipulated facts, there are certain factual questions affecting the determination of the establishment of a necessity. These may include the extent of the "extensive bleeding" as recited in the medical history as to whether a true emergency existed requiring immediate medical attention, along with the presence or absence of alternate courses of conduct.
{¶ 19} We therefore determine that the affirmative defense of "necessity" was applicable to appellant, without, however, determining the ability of appellant to establish such defense.
{¶ 20} We therefore sustain the Assignment of Error, reverse the trial court and remand for further proceedings in accordance herewith.
By: BOGGINS, J. EDWARDS, J. concurs separately, HOFFMAN, P.J. dissents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the decision of the Morrow County Court, Criminal Division, is reversed and remanded for further proceedings in accordance herewith. Costs to appellee.