OPINION
{¶ 1} Jeffrey Price appeals from his conviction of violating a protection order (second offense) after a jury trial.
 {¶ 2} The facts underlying the appeal are set out in the parties' briefs and are not in dispute.
 {¶ 3} Catherine and Jeffrey Price were married in 1998 and one child, Justin, was borne of their marriage. In 2000, the Prices began having marriage difficulties and Catherine obtained a civil protection order from the Montgomery County Common Pleas Court, Domestic Relations Division. Jeffrey was ordered to stay away from his family. He was ordered to refrain from contacting them. Jeffrey's visitation rights with Justin were suspended until he engaged in regular counseling for his bi-polar disorder and took medication. The CPO was to remain in full force for five years, except with regards to Jeffrey's parental responsibilities, such as support and visitation orders.
 {¶ 4} In April 2001, the Prices were divorced and the decree provided that Jeffrey's visitation privileges with Justin "shall be at the Mother's discretion." The court invited Price to seek more extensive visitation once he completed the Court's parenting seminar. After the Prices were divorced, Catherine permitted Jeffrey to visit with Justin on a regular basis for nearly four years until Justin began exhibiting violent tendencies after visits with Jeffrey. Catherine last permitted her son to visit with his father in December 2004.
 {¶ 5} Between April 11, 2005 and April 13, 2005, Appellant Jeffrey Price contacted his ex-wife, Catherine Price, by telephone, and left several messages on her digital answering machine. The messages were: "Check your front door." "I love you, Justin, talk to you later." "I love you, Justin." And "Justin, I love you. I'll see you on your birthday." Justin is the couple's son, who was seven years old at the time. After checking the front door, Ms. Price found an Easter Basket for Justin. Ms. Price called the police and reported that Mr. Price had violated a civil protection order by contacting her. Ms. Price explained that she considered this contact harassment because there were no plans for Price to see Justin on his birthday. Officer Clinton Price of the Kettering Police Department (no relation to the parties) contacted the defendant and asked him if he had made the phone calls in question. Initially, the defendant denied making the calls but then admitted doing so. The defendant told Officer Price he was drunk for one of the calls and the others were made concerning his son's birthday. (T. 48.) Officer Price said the defendant told him he made the calls because he had observed his son standing at a bus stop with no windows open in his ex-spouse's home where she could observe her son's safety. (T. 49.)
 {¶ 6} In his first assignment, Jeffrey argues that the trial court erred in convicting him of violating the civil protection order (CPO) because the pertinent sections of the order had been terminated by the subsequent divorce decree. He points to R.C.3113.31 (E)(3)(b) which provides in pertinent part:
 {¶ 7} "(b) Subject to the limitation on the duration of an order or agreement set forth in division (E)(3)(a) of this section, any order under division (E)(1)(d) of this section shall terminate on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children."
 {¶ 8} Appellant argues that the "no contact" order in the CPO was not violated because the divorce decree implied contact with his former wife and child was necessary for visitation to take place at his former wife's discretion. The State concedes the CPO visitation order was superceded by the divorce decree provisions pursuant to R.C. 3113.31(E)(3)(b), but the no-contact order for any other reason was not modified and was in effect at the time of the incident.
 {¶ 9} We agree with the State's argument. The defendant's contact with his former spouse by telephone did not concern visitation. Ms. Price had cut off the defendant's visitation privileges in June of 2004. Ms. Price had not arranged for the defendant to see his son on his son's birthday. The no contact order in the CPO was in full force and effect at the time of the defendant's phone calls. The divorce decree did not expressly or impliedly permit the defendant to contact his former spouse in violation of the civil protection order. The first assignment of error is Overruled.
 {¶ 10} In his second assignment, Price contends he was justified in contacting his son out of "necessity." Price argues that part of the reason he left phone messages for his son was his concern for his son's personal safety. The State argues we should reject this assignment because the defendant did not raise this defense at his trial.
 {¶ 11} R.C. 2901.05 is a general statute applicable to all chargeable offenses and creates in all cases a right to the affirmative defense of necessity as justification for violation of a statute, if such affirmative defense can be established. Elements of defense of necessity are as follows: (1) harm must be committed under pressure of physical or natural force, rather than human force; (2) harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining offense charged; (3) actor reasonably believes at moment that his act is necessary and is designed to avoid the greater harm; (4) actor must be without fault in bringing about situation; and (5) harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. State v.Harkness (1991), 75 Ohio App.3d 7, 598 N.E.2d 836; State v.Melchoir (1978), 56 Ohio St.2d 15, 381 N.E.2d 195; City ofDayton v. Gigandet (1992), 83 Ohio App.3d 886, 615 N.E.2d 1131;State v. Prince (1991), 71 Ohio App.3d 694, 595 N.E.2d 376. Pursuant to R.C. 2901.05(A), "the burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."
 {¶ 12} It is noteworthy that the defendant did not request a jury instruction on the defense of necessity nor did he argue in his final argument that he had established such a defense.
 {¶ 13} The Clermont County Court of Appeals has held that a jury instruction on the defense of necessity was not warranted where a defendant charged with telephone harassment repeatedly called her former husband at his work number after being warned repeatedly not to do so unless it was a genuine emergency involving the children, simply because the defendant felt the calls were necessary. State v. Gibbs, 134 Ohio App.3d 247.
 {¶ 14} None of the four phone messages left by the defendant related to his son's safety. The second assignment of error must be Overruled.
 {¶ 15} In his last assignment, Price again argues that since the final divorce decree authorized him to have visitation with his son "at his wife's discretion," the decree necessarily supercedes the no contact provisions of the civil protection order. We agree the decree authorized the defendant to respond to visitation arrangements authorized by Ms. Price. It did not authorize other contacts unrelated to arranged visitation permitted at the discretion of Ms. Price. The third assignment of error is Overruled. The Judgment of the trial court is Affirmed.
Wolff, J., concurs.