THE STATE OF OHIO, APPELLEE, *v.* PRICE, APPELLANT.

[Cite as *State v. Price,* 118 Ohio St.3d 144, 2008-Ohio-1974.]

(No. 2006–1689—Submitted October 10, 2007—Decided May 1, 2008.)

PFEIFER, J.

{¶ 1} The question before us is whether an allocation of parental rights and responsibilities in a divorce decree can modify a civil protection order ("CPO") beyond the CPO's sections concerning parental rights and responsibilities. We hold that a divorce decree can so modify a CPO.

### Factual and Procedural Background

{¶ 2} Appellant-defendant, Jeffrey Price, and Cathy Price had a child, J., on April 27, 1997. The couple married in April 1998. On September 21, 2000, while the couple was married but separated, the Montgomery County Court of Common Pleas, Domestic Relations Division, issued a CPO against Jeffrey, pursuant to R.C. 3113.31. Cathy and J. were listed as the persons protected by the order. In paragraphs 11 and 12 of the CPO, the court granted Cathy temporary custody of J. and suspended Jeffrey's visitation rights. Paragraphs 11 and 12 read as follows:

{¶ 3} "11. PARENTAL RIGHTS AND RESPONSIBILITIES TEMPORARILY ALLOCATED AS FOLLOWS: Temporary custody is hereby awarded to Petitioner.

{¶ 4} " * * *

{¶ 5} "12. VISITATION ORDERS DO NOT PERMIT RESPONDENT TO VIOLATE THE TERMS OF THIS ORDER:

{¶ 6} "(A) Respondent's visitation rights are suspended; *until he engages in regular counseling for his bipolar disorder and takes medication.*" (Emphasis sic.)

{¶ 7} Pursuant to paragraph 20, all of the terms of the CPO were to remain in full force and effect for a period of five years from the date granted "unless earlier modified, vacated, or extended by order of [the Montgomery Court of Common Pleas, Domestic Relations Division]." It further stated that "[e]xcept for paragraphs 11, 12, 13, 14 and 15 above, this order survives a divorce, dissolution of marriage, or legal separation." Paragraphs 13, 14, and 15 are irrelevant to this case.

{¶ 8} In April 2001, Cathy petitioned for and was granted a final judgment and divorce decree in the Montgomery Court of Common Pleas, Domestic Relations Division. As to parental rights and responsibilities, the divorce decree set forth:

{¶ 9} "The mother, Cathy L. Price, shall have full custody and control of the parties' minor child, [J.].

{¶ 10} "Visitation shall be at the Mother's discretion. Upon proof of completion of this Court's Parenting Seminar, Father may petition the Court for visitation."

{¶ 11} The divorce decree was silent as to how Cathy's decisions regarding visitation could be sought, and it did not set forth how she should communicate her decisions regarding visitation.

{¶ 12} For over three years after the divorce, Cathy permitted Jeffrey to have regular visits with his son. How arrangements were made between Cathy and Jeffrey regarding those visits is not in the record. Around June 2004, Cathy suspended visitation, stating that J. was exhibiting violent tendencies after visits with his father. Cathy nevertheless allowed J. to visit Jeffrey at his home around Christmas 2004. There was no testimony regarding how the arrangements for that visit were made or whether Cathy left open the possibility for more visits.

{¶ 13} On January 31, 2005, Jeffrey pleaded guilty to a misdemeanor charge of violating the CPO, based on telephone calls he had made earlier that month. He was fined $250 and was sentenced to 30 days in jail, with 25 days and $200 of that penalty suspended. The probable-cause form prepared by a police officer indicated that Jeffrey was alleged to have left harassing messages on Cathy's answering machine.

{¶ 14} Between April 11, 2005, and April 13, 2005, Jeffrey left four messages on Cathy's answering machine. The messages consisted of the following statements: (1) "Check your front door," (2) "I love you, [J]; talk to you later," (3) "I love you, [J]," (4) "[J.], I love you; I'll see you on your birthday." After receiving the first message, Cathy found an Easter basket left at her front door for J. Cathy contacted the police after the last message and explained to the police that she considered the contacts to be harassment and in violation of the CPO.

{¶ 15} The investigating officer stated that he recalled reviewing only the CPO, not the section of the divorce decree regarding visitation, before submitting Cathy's complaint. On April 15, 2005, Detective Gary Voehringer approved the charge against Jeffrey and obtained a warrant to arrest him without reviewing the divorce decree.

{¶ 16} Jeffrey was indicted on May 9, 2005, for a violation of R.C. 2919.27(A)(1), which prohibits a person from recklessly violating the terms of a protection order issued pursuant to R.C. 3113.31. The charge was a felony due to Jeffrey's earlier misdemeanor conviction. On September 9, 2005, a jury found Jeffrey guilty of violating a protection order. He was sentenced on October 18, 2005, to five years of community control and other sanctions. On July 28, 2006, with one dissenter,

the Second District Court of Appeals affirmed his conviction. *State v. Price*, Montgomery App. No. 21370, 2006-Ohio-3856, 2006 WL 2105855.

{¶ 17} The cause is before this court upon the acceptance of a discretionary appeal. *State v. Price*, 112 Ohio St.3d 1469, 2007-Ohio-388, 861 N.E.2d 143.

## Law and Analysis

{¶ 18} The CPO in this case was imposed on Jeffrey pursuant to R.C. 3113.31. R.C. 3113.31(E)(3)(b) provides that any section of a CPO involving the allocation of parental responsibilities and support "shall terminate on the date that a court in an action for divorce * * * issues an order allocating parental rights and responsibilities for the care of children."

{¶ 19} The CPO follows the statute, itself stating that "[e]xcept for paragraphs 11, 12, 13, 14 and 15 above, this order survives a divorce, dissolution of marriage, or legal separation." That is, a divorce decree automatically overrides the paragraphs of the CPO regarding visitation and the allocation of parental rights. Also, any part of the CPO can be modified by an order of the court. Pursuant to paragraph 20, all of the terms of the CPO remain in effect for a period of five years from the date granted, "unless modified, vacated, or extended by order of the [Montgomery Court of Common Pleas, Domestic Relations Division]."

{¶ 20} Thus, as an order from the same court that issued the CPO, a divorce decree may modify the terms of a CPO. Depending upon how a divorce decree allocates parental rights and responsibilities, it may modify multiple aspects of the CPO beyond the paragraphs dealing with parental rights and visitation.

{¶ 21} The CPO at issue forbids three categories of contact. Paragraph 1 forbids abuse of the protected parties:

{¶ 22} "1. RESPONDENT SHALL NOT ABUSE the family or household member(s) named in this Order by harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, contacting, or forcing sexual relations upon them."

{¶ 23} Paragraph 5 forbids physical proximity to the protected parties:

{¶ 24} "5. RESPONDENT SHALL STAY AWAY FROM THE FAMILY OR HOUSEHOLD MEMBER(S) NAMED IN THIS ORDER. Respondent shall not be present within 500 yards of them, and shall refrain from entering any place where they may be found. This order to stay away includes, but is not limited to, the buildings, grounds, and parking lots of their residences, schools, businesses, places of employment, day care centers, and babysitters. If Respondent accidentally comes in contact with these family or household member(s) in any public or private place, Respondent must depart immediately."

{¶ 25} Paragraph 6 forbids indirect contact, including contact by telephone:

{¶ 26} "6. RESPONDENT SHALL NOT CONTACT the family or household member(s) named in this Order or their residences, businesses, places of employment, schools, day care centers, and babysitters. Contact includes, but is not limited to, telephone, fax, e-mail, and voice mail."

{¶ 27} The very nature of parental visitation must necessarily yield a temporary relaxation of the type of contact forbidden in paragraph 5 of the CPO. The parties do not dispute that Jeffrey had no visitation rights under the CPO but that his rights expanded under the divorce decree. There can be no visitation if the parent is held to the "no contact" limits of paragraph 5 of the CPO. Obviously, the parent needs to be within 500 feet of his or her child to engage in visitation.

{¶ 28} On the other hand, paragraph 1 of the CPO, forbidding abuse of the protected parties, cannot be modified by a divorce decree's allocation of parental rights. One cannot imagine an instance where abuse would be necessary to achieve visitation.

{¶ 29} Whether the divorce decree causes a modification of paragraph 6 of the CPO—concerning telephone and other types of indirect contact—depends upon the language of the divorce decree. If the divorce decree sets forth times and locations for the visits to occur, or identifies intermediaries to establish the particulars, then visits can occur without the contact forbidden by paragraph 6 of the CPO. In its brief, appellee indicates that the typical CPO, for instance, sets forth very precise terms for visitation that obviate any need for contact between the protected child's parents.

{¶ 30} However, where the divorce decree is imprecise as to the particulars of visitation or encourages the respondent and protected parties to engage in dialogue to resolve visitation issues, that divorce decree would modify paragraph 6 of the CPO. The divorce decree at issue is the very model of imprecision. It states:

{¶ 31} "The Mother, Cathy L. Price, shall have full custody and control of the parties['] minor child [J.].

{¶ 32} "Visitation shall be at the Mother's discretion. Upon proof of completion of this Court's Parenting Seminar, Father may petition this Court for visitation."

{¶ 33} The divorce decree marks a significant change from the CPO, which had allowed no visitation, for it clearly anticipates visitation. Under the divorce decree, the only limit to Jeffrey's visitation is Cathy's discretion. The decree grants Cathy the ability to decide whether, when, where, and how visitation will occur.

{¶ 34} The question before us is not about visitation and how much visitation Cathy must allow. It is about whether the divorce decree creates the implication that Jeffrey may contact Cathy in order to seek visitation. At stake is whether Jeffrey can be convicted of a felony for so asking.

{¶ 35} The divorce decree opened a world of possibilities as to how visitation could be achieved. Certainly, the order would allow Cathy, at her discretion, to allow Jeffrey to periodically call to seek permission to see J. There is nothing in the record to indicate how Jeffrey and Cathy arranged for visitation for the three years after the divorce, though the mechanics of those visits seemed to work out.

{¶ 36} At best, the divorce decree is ambiguous. We have held that " 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.' " *State v. Young* (1980), 62 Ohio St.2d 370, 374, 16 O.O.3d 416, 406 N.E.2d 499, quoting *United States v. Bass* (1971), 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488. Because R.C. 2919.27(A)(1) prohibits the violation of a protection order, the terms of the protection order and divorce decree at issue essentially become part of R.C. 2919.27(A)(1). In interpreting criminal statutes, "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A).

{¶ 37} The divorce decree permits Jeffrey to seek and plan visits. In its section regarding parental rights and responsibilities, the divorce decree does not specifically allow telephonic contact, but it assuredly does not proscribe telephonic contact related to visitation. We must interpret any ambiguities in Jeffrey's favor.

{¶ 38} Jeffrey is owed what every criminal defendant is owed: notice that his conduct is illegal. A defendant cannot be convicted of violating an order that does not alert him specifically as to what conduct is allowed. The divorce decree is vague regarding contact related to visitation, and we find guidance for resolving this issue in our jurisprudence analyzing vague statutes. This court has set forth two areas of concern with vague statutes:

{¶ 39} " 'Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 83,

quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 40} The concerns set forth in *Norwood* are present in this case. First, neither the CPO nor the divorce decree gave Jeffrey a reasonable opportunity to know what was prohibited so that he could act accordingly. The second concern set forth in *Norwood*, that a vague law can lead to arbitrary application by persons improperly delegated the responsibility for interpreting the policy behind the statute, is especially prevalent in this case. Here, Cathy had the ability to determine in any given instance whether the CPO should apply or whether the more relaxed terms of the divorce decree should apply. Whether Jeffrey violated the CPO became a matter of Cathy's discretion, leaving to her discretion whether telephonic contact by Jeffrey was acceptable or unacceptable—and thus legal or illegal.

{¶ 41} If we were to affirm Jeffrey's conviction, we would give this court's imprimatur to Item V of the divorce decree, which sets forth that "visitation shall be at the discretion of the mother," and encourage its use in future cases where a divorce is granted while a CPO is still active. This we cannot do. The divorce decree in this case left the protected parties and the respondent without clear boundaries regarding nonabusive contact.

{¶ 42} The terms of the CPO itself allow the court to modify the CPO. The same court that imposed the CPO modified it in this case through the divorce decree. The court had the power to allow contact between the parties, and we find that it exercised that power in the divorce decree by allowing some contact for purposes of effectuating visitation. The CPO remained in effect in all instances to prevent any *abuse* by Jeffrey, including harassing telephonic contact.

{¶ 43} We therefore hold that the divorce decree, which set forth that visitation was to be at the mother's discretion, created a limited exception to paragraph 6 of the CPO, which forbids contact between a respondent and protected parties.

{¶ 44} Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and O'DONNELL, J., concur in judgment only.

———————

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna Shia, Assistant Prosecuting Attorney, for appellee.

Michael B. Miller, for appellant.