OPINION
{¶ 1} This appeal stems from a jury verdict convicting appellant, Michael A. Brown, on one count of burglary, in violation of R.C.2911.12(A)(4), a felony of the fourth degree, and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. We affirm. *Page 2 
 {¶ 2} On August 3, 2005, at approximately 10:00 p.m., Ronald Fenton, a retired sergeant of the Ashtabula County Sheriffs Department, was at home with his wife and adult daughter watching television. The main front door was open with the screen door closed. Suddenly, appellant, who was unacquainted with the Fentons, entered the residence through the screen door. Mr. Fenton stood up and ordered appellant to leave the home. Appellant advised Fenton someone was "after" him. Again, Fenton instructed appellant to leave but appellant still remained.
 {¶ 3} After another circular exchange with appellant, Fenton retrieved his service weapon from an adjacent room. The firearm was equipped with a laser which Fenton aimed at appellant's chest. Again, Fenton ordered appellant to leave the house. Appellant still refused to leave, insisting that someone outside was going to kill him. Fenton assured appellant that he would call the police and they would assist him if he would step outside. Appellant was unrelenting and would not exit the house. Finally, Fenton placed his left hand on appellant's chest and slowly pushed him out onto the porch. As he maneuvered appellant outside, Fenton noticed appellant's heart was racing. Fenton testified appellant did not look him in the face. Testimony reflected that appellant kept his left hand in his pocket throughout the encounter.
 {¶ 4} Once outside, Fenton removed appellant's hand from his pocket and "grabbed" the pocket to make sure he had no weapons. Appellant then represented that there were people between Fenton's house and the home to the immediate right. Fenton then pointed a flashlight in the direction of his side yard and saw no one. Although appellant still remained steadfast that somebody was trying to "get him," *Page 3 
Fenton testified appellant was unable to identify or describe the individuals. At trial, Fenton stated he believed appellant was "on something" due to his heart rate, inability to keep eye contact, and irrational conduct.[1]
 {¶ 5} Shortly thereafter, Sergeant Dennis Dibble of the Ashtabula Police Department arrived. Dibble testified that, upon his arrival, appellant began walking away from him. Dibble then grabbed appellant and advised him he was under arrest. Appellant was ordered to place his hands on the patrol car. Dibble observed what appeared to be a rock of crack cocaine fall from appellant's left hand, roll down the back window, and fall onto the trunk of the cruiser.[2] According to Dibble, appellant reached for the object. Dibble advised appellant to "keep [his] hands away from it; however, appellant grasped the object and threw it into the road. The object was never recovered. Dibble testified appellant appeared "high" because he was "hyper" and "paranoid."
 {¶ 6} On August 26, 2005, appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(4), a felony of the fourth degree; and one count of tampering with evidence, in violation of R.C.2921.12(A)(1), a felony of the third degree. Appellant pleaded not guilty to the charges. A jury trial commenced on March 14, 2006 and, on March 16, 2006, appellant was found guilty on both counts. Appellant was *Page 4 
sentenced to a term of one year imprisonment on each count, to be served concurrently. Appellant now appeals and assigns the following error:
 {¶ 7} "Appellant's burglary conviction is against the manifest weight of the evidence."
 {¶ 8} In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15, this court stated:
 {¶ 9} "`In determining whether the verdict was against the manifest weight of the evidence, * * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *.'" (Citations omitted.)
 {¶ 10} The judgment of a trial court should be reversed on a challenge to the evidentiary weight only in those exceptional situations in which the evidence weighs heavily against the conviction. Village of GrandRiver v. Dominish, 11th Dist. No. 2003-L-114, 2004-Ohio-5625, at ¶ 22, citing State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 11} Because appellant does not challenge his conviction for tampering with evidence, we shall confine our analysis to the burglary conviction. To achieve a conviction for burglary, the state was required to prove, beyond a reasonable doubt, that appellant, by force, trespassed in Fenton's occupied home. See R.C. 2911.12(A)(4). For purposes of this section, "trespass" is defined as knowingly entering or remaining on *Page 5 
another's land or premises, "without privilege to do so." R.C.2911.21(A)(1). "`Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position * * * or relationship, or growing out of necessity." R.C.2901.01(A)(12).
 {¶ 12} The state put forth evidence, through the testimony of Fenton, that appellant entered the Fenton residence, without invitation or consent, while it was occupied by Mr. Fenton, his wife, and their daughter. Fenton testified he repeatedly ordered appellant to exit the home but appellant refused to do so. According to Fenton, appellant asserted people were chasing him. Fenton retrieved his service firearm, pointed the laser at appellant's chest, and advised appellant to leave. Still, appellant would not exit and reiterated that people were chasing him. Eventually, Fenton lightly pushed appellant out of the house and onto the porch. Fenton testified he advised appellant to leave a "half dozen" times while appellant repeated his assertion that people were chasing him a "half a dozen to a dozen times."
 {¶ 13} According to Fenton, appellant had indicated the individuals chasing him had hid in the open area situated between Fenton's home and the home immediately adjacent to the Fenton residence. As a result, Fenton illuminated the area between his home and the neighboring home but observed no intruders. From this evidence, the state put forth adequate, credible evidence that appellant committed burglary pursuant to R.C. 2911.12(A)(4).
 {¶ 14} Appellant asserts, however, the jury's verdict was against the evidential weight to the extent his intrusion in the Fenton home grew out of necessity. By *Page 6 
definition, therefore, appellant contends he possessed a legal privilege to enter the home irrespective of Fenton's objections. See R.C.2901.01(A)(12).
 {¶ 15} At trial, appellant testified, regarding the events leading up to his entry into the Fenton residence:
 {¶ 16} "Q. Could you tell us what happened on that night.
 {¶ 17} "A. Well, I was out for a walk that night, going up towards West 58th Street. I'm not too familiar with Ashtabula, being from Cleveland.
 {¶ 18} "But I was under a lot of stress that day. Me and my wife had been having some problems and she's threatened me on several accounts and actually had me jumped in the house once before, and I've made a report about that and had an altercation with her son before.
 {¶ 19} "And on my way over to a friend of mine's on West 58th Street, some young boys were calling out my name and I — they don't look familiar to me, but I knew their intention, so I just took off running.
 {¶ 20} "Q. How — how did you know their intentions?
 {¶ 21} "A. Because of their gestures towards me.
 {¶ 22} "Q. What kind of gestures?
 {¶ 23} "A. They're trying to beckon me on, as they did before on a couple of other occasions and they jumped me.
 {¶ 24} "Q. Okay. Okay. Could you tell us how many individuals were present.
 {¶ 25} "A. There were about four, maybe five. *Page 7 
 {¶ 26} "Q. Okay. When you say you took off, did you see what they may have done at that point in time?
 {¶ 27} "A. Did they — as far as coming after me? Oh, they took off after me, yes."
 {¶ 28} Appellant then testified he ran up the street and observed a screen door open with a light. According to appellant's testimony, he knocked on the door twice, entered, and asked the occupants to call the police. At this point, Fenton advised appellant to leave the home.
 {¶ 29} With respect to appellant's defense of necessity, the jury was instructed accordingly:
 {¶ 30} "The defendant, Michael A. Brown, in addition to his plea of not guilty claims that he did not trespass in the habitation because he was granted a privilege growing out of necessity because he was being pursued by assailants. You are instructed as a matter of law that necessity is defined as when the defendant has acted under the force of extreme circumstances to prevent a greater harm from occurring. It is a question of fact for the Jury to determine whether or not a privilege was granted to the defendant to enter the habitation on August 3rd, 2005, growing out of necessity because he was being pursued by assailants.
 {¶ 31} "In the event you find that some privilege was granted to the defendant growing out of necessity because he was being pursued by assailants, then you must further determine whether or not the defendant on August 3rd, 2005, complied with the privilege through necessity granted to him or whether he exceeded the privilege through *Page 8 
necessity granted to him. If you find that the defendant on August 3rd, 2005, was not given privilege through necessity to enter in the habitation, or that he substantially exceeded any privilege granted to him to enter the habitation, then you may find that his entry was unlawful. If you find the defendant on August 3rd, 2005, was given privilege through necessity to enter the habitation and that he did not substantially exceed the privilege through necessity given to him to enter the habitation, then you must find his entry was lawful."
 {¶ 32} After deliberating on the evidence and applying the foregoing instruction to the facts in the case, the jury returned a verdict of guilty. We do not believe the jury lost its way in arriving at its verdict. The evidence demonstrated that appellant was instructed to leave the Fenton residence multiple times; he chose to remain, all the while underscoring that people were chasing him. Ultimately, Fenton advised appellant he would call the police and assist appellant with his concerns if he simply stepped outside. When appellant still refused to exit the home, Fenton pushed appellant out onto the porch. Fenton investigated the area where appellant claimed his pursuers were waiting for him. Fenton saw no one.
 {¶ 33} Given the evidence, the jury could have found appellant's version of the facts not credible, thereby finding he was not entitled to enter into the Fenton residence. Further, even if the jury believed appellant was being chased, it could have reasonably found any privilege appellant may have had was substantially exceeded by his failure to comply with Fenton's order to simply step onto the porch and await the arrival of the *Page 9 
police. Either way, we do not believe the jury's verdict is against the manifest weight of the evidence.
 {¶ 34} This conclusion notwithstanding, we point out that the jury was not given a full instruction on the affirmative defense of necessity. To wit, courts of Ohio have held that the following elements must be met in order to demonstrate the basic defense of necessity: "`(1) the harm must be committed under pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining offense charged; (3) the actor reasonably believes at that moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm.'" State v. Mogul, 11th Dist. Nos. 2003-T-0177 and 2003-T-0174, 2006-Ohio-1878, at ¶ 44, quoting State v. Prince (1991), 71 Ohio App.3d 694. 669; see, also, State v. Price, 2d Dist. No. 21370,2006-Ohio-3856, at ¶ 11.
 {¶ 35} Although the trial court's instruction was erroneous, any resulting error is harmless. That is, even had the trial court given the jury the complete definition of the defense of necessity, appellant's own testimony would undermine the defense. According to appellant, he entered the Fenton residence under the pressure of a human source. In Ohio, a party seeking to utilize the defense of necessity must established his actions were a result of a "physical or natural force, rather than a human force." See, e.g., State v. Spingola (2001), 144 Ohio App.3d 76, 83. The defense requires the criminal conduct to be committed as a consequence of "physical or natural forces." *Page 10 
Such forces are expressly distinguished from human forces. Therefore, in Ohio, the necessity defense is inapplicable when the alleged reason for the necessity arises from a human source. Thus, even had the jury been properly charged, appellant failed to establish the first element of the affirmative defense of necessity.
 {¶ 36} Appellant's sole assignment of error lacks merit.
 {¶ 37} For the reasons set forth above, appellant's sole assignment of error is overruled and the decision of the Ashtabula County Court of Common Pleas is hereby affirmed.
DIANE V. GRENDELL, J., concurs,
COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion.
[1] Fenton had been a police officer for 30 years and testified he had encountered someone "that either had consumed drugs or [was] coming down off of drugs, probably two or three times a week."
[2] Officer Dibble testified, in his 16 years of experience as a police officer, he knows what crack cocaine looks like. He stated he sees crack cocaine about 3 to 4 times a week in the course of his duties. During this encounter, he testified he observed the object for about 5 seconds and described it as about a quarter of an inch, with an odd shape, like an opal, with a milky-white color.