JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Defendant Ismael Solivan appeals from his conviction for attempted burglary in violation of R.C .2911.12(A)(4) and R.C. 2923.03. For the reasons set forth below, we affirm.
 {¶ 2} On June 8, 2006, defendant was indicted for one count of attempted burglary. Defendant pled not guilty and waived his right to a jury trial.
 {¶ 3} The matter proceeded to trial on September 18, 2006. For its case, the state presented the testimony of Neil Senz, and Cleveland Police Officers Ricardo Bayness and Kevin Dunlay.
 {¶ 4} Senz testified that at approximately 1:30 a.m. on May 13, 2006, while he was watching television, he heard his back doorbell ringing repeatedly. He looked out a window and observed defendant. Defendant appeared to be in distress, his pants were ripped and he was mumbling in Spanish. Senz opened the door for a few moments and smelled alcohol on defendant. Defendant then started yelling and began pushing his way in. After defendant partially entered the home, Senz quickly shut the door and locked it then called police.
 {¶ 5} Officer Bayness and Sgt. Dunlay arrived a short time later. According to the officers, defendant had gone to the residence next door to Mr. Senz, opened the screen door and pushed on the back door. Defendant appeared to be under the influence of alcohol, was speaking in broken Spanish and repeatedly stated that he and his brother were on West 117th Street. Defendant did not indicated that he had *Page 5 
been assaulted earlier in the evening and could not answer the officers' questions. They did not observe other vehicles in the immediate area.
 {¶ 6} Defendant had blood on his pants and was transported to MetroHealth. The officers questioned defendant but he did not respond the their questions.
 {¶ 7} Defendant elected to present evidence. According to medical records obtained from MetroHealth, defendant stated that he had been running from assailants and heard gunshots, jumped over a fence, and sustained a laceration to his testicle. Defendant incurred a blood loss and also had lacerations and abrasions on his face.
 {¶ 8} Defendant's sister, Irma Solivan, testified that she arrived at MetroHealth after receiving a call from defendant's girlfriend. Defendant's clothes were muddy and dirty. He could not speak in complete sentences and his speech was not making sense. She observed a deep cut on his legs which extended to his genital area. Solivan than assumed that her brother had been in a fight or had been chased.
 {¶ 9} Defendant testified in English and without the aid of an interpreter, that he owns his own construction and remodeling business. On May 12, 2006, he went to a baseball game. He had approximately four beers then went to Diamond's Men's Club, then the Crazy Horse, where defendant had a few drinks. Defendant then went to the Gold Horse Bar and had a few more drinks. Defendant became ill then asked for one more drink. The bartender called a taxi for defendant. As the *Page 6 
taxi driver proceeded to the home of defendant's girlfriend, he and defendant argued and, according to defendant, the driver made him exit the cab in the area of West 128th Street and Lorain.
 {¶ 10} Defendant tried to call his girlfriend but his cell phone did not work. As he was walking the rest of the way, defendant was grabbed from behind. A total of four assailants assaulted him, asked him if he had money, and poked him with something in the neck. The men tried to get him into a car, but fled when someone approached. Defendant ran from the scene. He thought he heard someone shooting at him so he continued to run until he could go no further. He observed a light on at Senz's home. As Senz came to the door, defendant considered that he might be Hispanic and told him in Spanish to let him in. Defendant admitted that he grabbed the door and Senz then closed the door and locked it. Defendant then went to the house next door. According to defendant, he went to the home solely to get help The police subsequently arrived and arrested him. He did not feel well so he did not speak to police and he could not respond to questions from his sister.
 {¶ 11} Defendant did not know how he sustained his laceration. While at the hospital the next day, his sister told him that the police wanted to speak with him but no one ever arrived to speak to him and he was released. He did not feel well for the next few days.
 {¶ 12} The court found defendant guilty of the charge and sentenced him to one year of community control sanctions. Defendant now appeals and assigns two *Page 7 
error for our review.
 {¶ 13} Defendant now appeals and assigns two errors for our review.
 {¶ 14} For his first assignment of error, defendant asserts that the trial court erred in finding him guilty of burglary. Defendant maintains that there was no evidence that he acted with the requisite intent and no evidence that he used force; the trial court erroneously required him to establish the affirmative defense of necessity and erroneously deprived him of his right to seek refuge.
 {¶ 15} As an initial matter, we note that "`[sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 16} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see, also, State v. Thompkins, supra. *Page 8 
 {¶ 17} R.C. 2923.02(A) defines attempt as follows:
 {¶ 18} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 19} It is an act or omission constituting a substantial step in a course of conduct planned to culminate in the actor's commission of the crime but that falls short of completion of the crime. State v.Group, 98 Ohio St.3d 248, 781 N.E.2d 980, 2002-Ohio-7247.
 {¶ 20} The elements of burglary are set forth in R.C. 2911.12 as follows:
 {¶ 21} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 22} "(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 23} "Criminal trespass" is defined as:
 {¶ 24} "(A) No person, without privilege to do so, shall do any of the following:
 {¶ 25} "(1) Knowingly enter or remain on the land or premises of another." R.C. 2911.21.
 {¶ 26} "Privilege" is defined for the purpose of the Revised Code as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." *Page 9 
R.C. 2901.01(A)(12).
 {¶ 27} A claim of necessity is an affirmative defense. Kettering v.Berry (1990), 57 Ohio App.3d 66, 567 N.E.2d 316; State v. Harkness
(1991), 75 Ohio App.3d 7, 598 N.E.2d 836; State v. Marzette (April 16, 1999), Montgomery App. No. 17187. The privilege is required to be established by the person asserting it. State v. Harkness, supra;Dayton v. Gigandet (1992), 83 Ohio App.3d 886, 615 N.E.2d 1131.
 {¶ 28} The following elements must be met in order to demonstrate the basic defense of necessity: "(1) the harm must be committed under pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to, that sought to be prevented by the law defining offense charged; (3) the actor reasonably believes at that moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm."State v. Prince (1991), 71 Ohio App.3d 694, 699, 595 N.E.2d 376.
 {¶ 29} In this instance, defendant maintains that he committed a trespass of necessity because he had been assaulted by four men then heard gunshots as he fled. He further asserted that he was fearful and in need of assistance when he attempted to push Senz's door open and go inside. We note, however, that the state's evidence demonstrated that defendant said nothing of an assault or being chased when he attempted to gain entry or when police arrived, or later at the *Page 10 
hospital regarding being assaulted or chased. The trial court was therefore free to disregard the claim of trespass of necessity in resolving the issues presented.
 {¶ 30} Moreover, applying the four-part test of trespass of necessity, we note that there was no evidence of pressure of physical or natural force, rather than human force. Further, we cannot say that the harm sought to be avoided is greater than or at least equal to that sought to be prevented as it was not clearly established that defendant was being pursued and, more importantly, the forcible entry into the premises was not required in order for defendant to obtain help. Similarly, defendant could not have reasonably believed that it was necessary to forcibly enter a stranger's home against the owner's will in order to avoid the claimed harm. Finally, the harm was not shown to be imminent thereby leaving no alternative as the claimed attackers were not observed near defendant and defendant could have simply asked for someone to call police or EMS.
 {¶ 31} Accord State v. Brown, Ashtabula App. No. 2006-A-0045,2007-Ohio-4380. In that case, the defendant attempted to enter the home and was told to leave. Defendant refused and stated that someone was after him. In upholding defendant's conviction for a violation of R.C.2911.12(A)(4), the appellate court rejected the claim that defendant was granted a privilege growing out of necessity because he was being pursued by assailants. The court stated, "even if the jury believed appellant was being chased, it could have reasonably found any privilege appellant may have had was substantially exceeded by his failure to comply with *Page 11 
Fenton's order to simply step onto the porch and await the arrival of the police." The court also stated defense is inapplicable when the alleged reason for the necessity arises from a human source.
 {¶ 32} As to the claimed "right to seek refuge," we note that, as a general rule, one does not have a duty to take action to rescue or aid a person, except where there is some special relationship that gives give rise to a duty to take action to aid or protect a person such as the relationship between a possessor of land and its invitees. Heys v.Blevins (June 13, 1997), Montgomery App. No. 16291. Sections 314 of the Restatement 2nd of Torts delineate Thus, there is no duty of a homeowner to administer aid to a trespasser. Accordingly, because the landowner denied defendant entry and pushed against the door, we cannot find that defendant was privileged to trespass into the occupied structure.
 {¶ 33} For all of the foregoing reasons, we conclude that the evidence was sufficient to demonstrate the essential elements of the offense of attempted burglary and we cannot conclude that the trial court erred in rejecting the affirmative defense of necessity. This assignment of error is not well-taken.
 {¶ 34} For his second assignment of error, defendant maintains that his conviction is against the manifest weight of the evidence.
 {¶ 35} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will *Page 12 
be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
 {¶ 36} State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 37} In reviewing a claim that a conviction is against the manifest weight of the evidence, a reviewing court cannot reverse a conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814. Further, this court must remain mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862.
 {¶ 38} In this matter, the state's evidence demonstrated that defendant rang Senz's doorbell, and when Senz started to open the door, defendant forcibly grabbed the door and began to push his way inside. He mumbled something in Spanish but did clearly ask to come in and did not indicate that he had been assaulted or chased. Defendant maintained that four men had assaulted him and he heard gunshots as he fled to Senz's house. Defendant admitted to pushing the door and gaining partial entry but he offered the defense of necessity. As we have *Page 13 
determined that the evidence was insufficient to establish this affirmative defense, we cannot say that the trial court lost its way and created a manifest injustice in convicting defendant of the charge.
 {¶ 39} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., CONCURS PATRICIA ANN BLACKMON, J., CONCURS IN JUDGMENT ONLY